# In re Anonymous Nos. 43 D.B. 77 and 3 D.B. 78

PEARLSTINE, *Board Member*, January 9, 1979—

## 1. HISTORY OF PROCEEDINGS

On October 17, 1977, petitioner filed a petition for discipline containing three charges of professional misconduct concerning [   ], Esq. (hereinafter respondent) and the petition was docketed at No. 43 D.B. 77.

On January 31, 1978, a separate petition for discipline was docketed concerning respondent, No. 3 D.B. 78. Petitions for discipline were served upon respondent in both situations. At the request of respondent, the petition for discipline was consolidated with the matter then under adjudication, 43 D.B. 77, and referred to the same hearing committee No. [   ] consisting of [   ], Esq., chairman; [   ], Esq., and [   ], Esq.

The petitions charged respondent with various violations of the disciplinary rules as follows:

D.R. 7-101(A)(2) and D.R. 7-101(A)(3) by initially failing and later refusing to endorse insurance company settlement checks, the proceeds of which in their entirety belonged to Mr. and Mrs. [A], despite having been requested by his clients to do so.

It is further charged that respondent violated D.R. 9-102(B)(3) in that he failed to render an appropriate accounting to clients regarding the settlement proceeds by wrongfully asserting a "lien" over the settlement checks and by violating D.R. 1-102(A)(6) and D.R. 9-102(B)(4) in failing to endorse and give over the insurance settlement checks and thereby pay to the [A's] the proceeds of the settlement of their cause of action.

Charge II alleges that respondent violated D.R. 7-102(A)(1) which states that a lawyer shall not "(1) file a suit, assert a position, conduct a defense,

delay a trial, or take other action on behalf of his client when he knows or it is obvious that such action would serve merely to harass or maliciously injure another."

Respondent was also charged with violation of D.R. 7-106(C)(7), intentionally or habitually violating any established rule of procedure or of evidence and D.R. 1-102(A)(5) engaging in conduct that is prejudicial to the administration of justice and D.R. 1-102(A)(6) engaging in any other conduct that adversely reflects on his fitness to practice law. These charges arise out of respondent's conduct in opposing a suit instituted against him by the City of [B] in an attempt to collect the business privilege tax and the tactics of respondent in connection therewith.

Charge III alleges that various derogatory remarks made by respondent in his petition for allocatur in the equity-trespass action involved in Charge II represented a character assassination of counsel in violation of D.R. 1-102(A)(6), further asserting that this conduct represented such further harassment as to constitute a violation of D.R. 7-102(A)(1).

Charge IV alleges a violation of D.R. 1-102 and D.R. 7-102 in filing property claims in behalf of respondent's landlord without first seeking the landlord's authority or permission to do so. These charges stem from the unauthorized filing by respondent of a property claim on behalf of his landlord which successfully stayed a sheriff's sale of respondent's personal property located in his office. No attorney-client relationship ever existed between the landlord and respondent nor was there any evidence that the landlord had a lien or had previously distrained upon the personal property of the respondent.

## II.  DISPOSITION OF MOTIONS

On November 8, 1977, respondent's motion for an additional 30 days to file answer to disciplinary complaint was granted.

On December 19, 1977, motion to dismiss complaint because of unconstitutional bias within the meaning of the fifth and fourteenth amendments of the United States Constitution and article I, §§1, 9, 25 and 26 of the Pennsylvania Constitution containing eight separate motions was referred to hearing committee. Rulings were made at a prehearing conference on January 16, 1978.

Respondent's motion for an open hearing was granted.

Respondent's motion to dismiss the complaint because of unconstitutional bias was denied, with leave granted to present additional evidence at the hearing and to renew the motion if appropriate. Respondent did not renew this motion.

Respondent's motion to dismiss because charges violate the freedom of speech and right to litigate provisions of the first and fourteenth amendments of the United States Constitution and article I, §§7, 11 and 26 of the Pennsylvania Constitution were denied.

Respondent's motion to dismiss charges because relevant disciplinary rules were unconstitutionally vague under the fact situation of the complaint was denied, with right to renew after presentation of evidence. Respondent did not renew this motion.

Respondent's motion to dismiss because the charges do not violate the disciplinary rules was denied with right to renew after presentation of evidence. Respondent did not renew this motion.

The previous motions contained in the original motion of December 19, 1977, were not pursued by respondent.

A request of respondent to review the complaint files and administrative file pertaining to disciplinary proceedings and to receive copies of any and all documents contained in petitioner's file which respondent desired to review was granted.

A motion for limited sequestration of witnesses was granted.

On January 24, 1978, a motion to dismiss the complaint, containing five new and separate motions, was referred to a hearing committee by vice chairman Henry.

A motion to dismiss the complaint because of matters not brought to the attention of respondent was considered in processing, and approval of the formal charges and a motion to dismiss the proceeding because of lack of separation of judicial and prosecution functions was denied on January 31, 1978.

A motion to dismiss the complaint because it goes beyond charges approved by a reviewing member was denied with right to renew. Respondent did not renew the motion.

A motion to strike the recommendation of [C], Esq., entered July 28, 1978, was denied with right to renew. Respondent did not renew this motion.

On February 15, 1978, a motion to dismiss and asking other relief with respect to 3 D.B. 78 (Charge IV) was filed.

On February 15, 1978, motions lettered A through M were filed.

A motion to consolidate with 43 D.B. 77 was allowed.

A motion for public hearing was allowed.

A motion incorporating all previous motions was allowed.

A motion to examine the administrative file was allowed.

A motion to discharge because of splitting of causes of action was denied.

A motion to dismiss the proceeding because of relationship between disciplinary counsel and hearing plus review members was denied.

A motion to dismiss the proceeding because of violation of article I, §§11 and 20 of the Pennsylvania Constitution was denied.

A motion for pre-hearing conference and a motion to have decision by the Supreme Court of Pennsylvania were denied.

A motion to dismiss the proceedings because of invidious discrimination and choice of triers was denied.

A motion to dismiss the proceedings because of the prejudicial prosecutor was denied.

A motion to discover reason for splitting No. 3 D.B. 78 from No. 43 D.B. 77 was denied with leave to present evidence and renew motions. Respondent did not renew these motions.

## MOTIONS FILED BY RESPONDENT SUBSEQUENT TO DISCIPLINARY OPINION AND RECOMMENDATION FILED BY HEARING COMMITTEE

A motion to dismiss the proceeding because of violation of the doctrine of fair notice and due process of law was denied by the board upon consideration of the record at its meeting on Friday, December 8, 1978.

A motion for evidentiary hearing concerning the manner in which the hearing committee was chosen and how it made the findings described in the previous motion without any evidence in the record and to determine if any communication was made with it at any time previous to its appointment and

the above decision was denied by the board upon consideration of the record at its meeting on Friday, December 8, 1978.

A motion to dismiss the proceedings because disciplinary counsel has no experience in the civilian arena and functioned as a lieutenant colonel in Office of Judge Advocate General during his entire professional career was denied by the board upon consideration of the record at its meeting on Friday, December 8, 1978.

A motion to terminate the proceedings because of an appearance of impropriety was denied by the board after consideration of the record at its meeting on Friday, December 8, 1978.

A motion to dismiss the recommendation because of lack of constitutional standards was denied by the board after consideration of the record at its meeting on Friday, December 8, 1978.

A motion for evidentiary hearing concerning any contact between disciplinary counsel, any witness and/or chairman [   ] was denied by the board after consideration of the record at its meeting on Friday, December 8, 1978.

A motion to defer filing exceptions and brief pending outcome of the above motions was denied by order of the vice chairman.

A motion to permit filing of brief in excess of 30 pages with no limitations was granted.

The time for the filing of exceptions and brief, as well as a brief in support of the deferred motions, was extended to October 30, 1978, by the vice chairman.

The time for filing a brief opposing exceptions and reply brief was extended to November 29, 1978, by the vice chairman.

A motion for oral argument before the entire disciplinary board was denied by the vice chairman.

## III. HEARING COMMITTEE REPORT

The hearing committee devoted seven days to the hearing of this matter and reviewed over 1,800 pages of the notes of testimony, approximately 1,000 pages of which were devoted to Charges II and III. Its report, 42 pages in length, thoroughly considers the facts, makes detailed documented findings, which are adopted by this board, and renders certain conclusions of law, which are incorporated herein as follows:

Respondent is an attorney-at-law, duly admitted and licensed to practice law before the various courts of the Commonwealth of Pennsylvania.

As an attorney-at-law duly admitted to practice law in the Commonwealth of Pennsylvania, respondent is subject to the Code of Professional Responsibility of the American Bar Association as adopted by the Supreme Court of Pennsylvania on May 20, 1970.

As an attorney-at-law duly admitted to practice law in the Commonwealth of Pennsylvania, respondent is subject to the exclusive disciplinary jurisdiction of the Supreme Court of Pennsylvania and the disciplinary board created by the Supreme Court of Pennsylvania.

Respondent received a due process hearing before a designated hearing committee of the Disciplinary Board of the Supreme Court of Pennsylvania.

The Disciplinary Board of the Supreme Court of Pennsylvania has the authority to discipline respondent for violations of the aforesaid Code of Professional Responsibility.

Respondent has violated the following Disciplinary Rules: Charge I D.R. 7-101(A); D.R. 7-101(A)(3); D.R. 9-102(B)(3); D.R. 1-102(A)(6);

D.R. 9-102(B)(4); Charge II D.R. 7-102(A)(1); D.R. 1-102(A)(5)(6); D.R. 7-106(C)(7); Charge IV D.R. 1-102(A) and (5).

Respondent did not violate the following Disciplinary Rules: Charge III D.R. 1-102(A)(6); D.R. 7-102(A)(1); Charge IV D.R. 7-102(A)(5).

In its recommended disposition the hearing committee made certain observations entitled recommended disposition as follows:

"The four charges against respondent dealt with in these proceedings cover essentially three legal matters, small portions of the time and effort expended by a very busy trial lawyer over a period of six years, from 1971 to 1977. The conduct we have found to violate the Code of Professional Responsibility is clearly not of the most obvious and flagrant level, i.e. embezzlement. And yet, there is a thread running through Respondent's behavior as evidenced in this Record which is disconcerting . . . even alarming to this Hearing Committee.

"It seems fair to state that Respondent is not a lawyer in the conventional mold. Practicing by himself out of a small office with minimum staff and facilities, he maintains a large and active practice. His unorthodox methods involve the filing of pleadings, motions, petitions, briefs and other tools of the profession in great profusion. His recital of authority is very extensive, if not always accurate and precise.

"His energy and tactics in the representation of his clients, his frequent resort to personal law suits against others, and his liberal use of appeals have proved disconcerting and frustrating to many lawyers and judges. But it must be clear the disciplinary system is not a measure of last resort for lawyers and judges who cannot cope with an

energetic and innovative practitioner. Only where a lawyer's behavior violates the Code and in so doing has inflicted harm on his client or has been abusive of the rights of other litigants, lawyers, judges or the legal system, should the disciplinary system be resorted to. The great temptation to use the disciplinary system simply out of frustration must be avoided. Only conduct actually amounting to violations should ever merit discipline.

"We therefore approached the disposition of these charges with a resolve on the one hand that the proceedings not become a weapon against Respondent by frustrated opponents, but instead, that it be exclusively a forum for measurement of his conformity with the rules of conduct to which all lawyers are bound by law and rule. Having determined violations of the Code occurred, we must now address the level of disciplinary action.

"A disciplinary hearing is held to determine the continued fitness of a lawyer to practice law. In Re: Alker, 157 A. 2d 749 (1960). Its purpose is not alone, or even principally, to punish, but rather to insure the present and future protection of others who are entitled to protection. We have examined the totality of Respondent's conduct, as reflected by the evidence in the Record, since isolated instances of misconduct may not warrant severe disciplinary sanction. Office of Disciplinary Counsel vs. Campbell, 345 A. 2d 616 (1975).

"What is the apparent future risk if Respondent continues to practice law as in the past: Exploring the thought processes and legal philosophy of Respondent based on an eighteen hundred page Record offers much assistance in measuring his capacity for good . . . or mischief.

"Respondent insisted on representing himself through a long and involved proceeding despite repeated reminding by the Committee that he was entitled to legal counsel. For various reasons (cost, time required to prepare counsel, etc.) he refused. It is doubtful that the basic fallacy of a lawyer representing himself will ever be more dramatically demonstrated than in this case. The technical difficulties in separating his questions, answers, objections, arguments, etc. were substantial. But the fundamental difficulty in applying objective appraisal to emotional issues simply proved too much for him.

"Respondent's view of the proceedings is unorthodox. He insisted that Disciplinary Counsel had a duty to open his files completely, to provide Respondent with evidence, witnesses and even copies of Respondent's own exhibits, and to investigate whether witnesses had told the truth. (TR 826,937). Out of an abundance of caution, the Hearing Committee allowed Respondent considerable latitude, by giving access to Disciplinary Counsel's file, in presenting his case, in the questions allowed, in allowing him to call witnesses out of order, and in tolerating a mixture of argument and testimony with which the Record abounds. All of this contributed to a Record which was unnecessarily long and burdensome.

"Respondent revealed many novel theories relating to the practice of law. Among these were his view that a clerk in a public office has a duty to erase and/or correct entries on public records, even judgments, on the assertion of error by an attorney (TR 928-9). This Committee is convinced that this is not the law and indeed is an invitation to such

mischief the integrity of the recording and filing systems might well be impaired.

"Respondent theorized at one point the Rules of Civil Procedure were inapplicable because the right of waiver, reserved by the Court in Pa.R.C.P. 126, means that no Rule is enforceable until the Court decides not to utilize its right of waiver. (Respondent's Brief, Page 97). Such an interpretation is clearly erroneous, but is so unorthodox as to cause one to be legitimately concerned about the standards and practices of its proposer.

"Respondent during one vigorous exchange on a ruling by the Committee expressed the view that, 'when you are a lawyer, you are a warrior. You are engaged in war with the other side.' (TR 801). Unexpressed was the corollary that 'all is fair in . . . and war.' This view is certainly consistent with Respondent's undisciplined behavior revealed in this Record.

"Respondent appeared as a supremely confident attorney who glories in his individuality. He views with indifference customary rules on keeping records. Indeed, his record-keeping of client payments is clearly inadequate. Yet he seems unaware, even unconcerned about this, even though this failing was at the heart of his trouble with the [As]. In matters of practice, he seems unaware that while his unorthodox tactics may rarely equate themselves with brilliance, they will most often be merely bad, even dangerous practice, with his clients suffering the ultimate loss.

"This Committee believes the above examples from its experience in this case warrants the judgment we have reached. Having carefully considered Respondent's conduct based on the believable testimony in this case, having carefully observed

his conduct in the course of seven eventful days of hearings, and having read and thought through the revelations in his exhaustive brief, the Committee is brought to the inevitable conclusion that this defendant does not follow the law or respect it. He uses it, bends it, twists it and turns it to achieve his own chosen goals. There is danger to the private litigants, to officers of the Court, to the Court itself, indeed to the very system we describe as the Rule of Law in such disregard and disrespect.

"What discipline can be exerted that others may not suffer the torment of the [As], the [Ds], yes and of the [Es] and [Fs]? Can respondent adjust his habits of practice to a more rational and acceptable pattern? Can he forego the use of legal process for purposes of harassment?

"This Committee has balanced many factors. These are the first formal charges against him before the Disciplinary System. Moreover, as Disciplinary Counsel pointed out in his Brief, Charges II and III arise out of lawyer-disagreements dating back a number of years. And yet, Respondent has never made the [As], the private complainants, whole by paying them money clearly due them. And the simple truth is that Respondent has played fast and loose with the legal system, bending it to his own purpose. Respondent's attitude toward these proceedings and the legal system have been extremely negative. One does not cure an apparent contempt for the law by a sprinkling of professions of respect, as Respondent is so wont to do. Accordingly, this Committee recommends "Public Censure by the Supreme Court, with . . . Probation" (PRDE §85.8(3)) as the appropriate discipline to be meted out to the Respondent. The Committee does not believe that any level of private censure will be

sufficiently impressive to Respondent. But for reasons above noted, neither suspension nor disbarment at this point seem justified.

"Our recommendation of probation reflects our confidence that a period of observation and orientation for Respondent will be necessary to assist him to make necessary adjustments in his mode of practice."

Respondent filed exceptions to the Recommended Disposition portion of the hearing committee report, which will be referred to hereinafter.

## IV. DISCIPLINARY BOARD ACTION

Pursuant to the order of Vice Chairman Henry, oral argument with respect to the exceptions to the hearing committee report and deferred motions was heard on December 8, 1978, at 2:00 p.m., in the conference room of the disciplinary board located at [  ] Building, [  ] Place, [B], Pennsylvania, by an oral argument panel consisting of Raymond Pearlstine, Esq., Chairman; John C. Anderson, Esq.; and Charles V. Henry, III, Esq. In accordance with respondent's request, the oral argument was open to the public. Three persons other than the members of the panel responded and counsel appeared and remained throughout the argument. The argument was participated in by respondent in his own behalf and by [G], Esq., of counsel for petitioner. Briefs were furnished to the panel members by respondent and by Mr. [G]. Respondent's brief restated the motions that had been previously made and attached many of such motions as exhibits. The briefs of counsel were carefully considered by the members of the panel before, during and subsequent to the argument.

Respondent argued in chief for one-half hour and petitioner responded for 25 minutes, following which respondent was permitted rebuttal argument, which in fact covered much of his primary argument and a reiteration of his position for another 35 minutes after which the parties were advised that the matter would be considered by the board at its meeting the following day, December 9, 1978.

Beginning on page 31 of brief on exceptions filed by respondent at No. 53, he excepts to the recommended disposition quoted supra from the hearing committee report.

Respondent treats the comments under the discussion as though they were findings or new charges, contrary to In Re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222 (1968), and In the Matter of Rosenbaum, 478 Pa. 93, 96, 385 A. 2d 1329 (1978). This reliance is unfounded. In the Ruffalo case added charges were based upon testimony adduced and the Supreme Court of the United States decided that procedural due process had not been followed. In Rosenbaum, the recent Pennsylvania Supreme Court case, charges were filed dealing with solicitation but the basic issue became one of conflict of interest. Justice Manderino wrote for the court: "Clearly those charges contain nothing from which it can be said the appellant received due and proper notice of a conflict of interest charge."

The discussion of the hearing committee referred to supra is a summation of the committee's thinking, reasoning and reaction as to the misconduct and the recommended sanction. As was properly stated by petitioner in his brief, "It is clear from a reading of these pages that the committee in making these various comments, was referring to the

respondent's attitude and demeanor which are extremely relevant factors in this board's determination of the ultimate issue, namely, the fitness of this attorney to practice law."

The main thrust of respondent's argument before the panel was that chairman Unkovic exerted improper influence over these proceedings. (See Motions 2, paragraphs 14, 19, 26 and 27-29; and also Motion 7.) The evidence is to the contrary, since even before the respondent had filed his first motion or answer to the petition for discipline, chairman Unkovic withdrew from any further participation and this was confirmed by a letter of the secretary dated November 8, 1977, to the respondent. Respondent seems to feel that there is a conspiracy consisting of Alex Unkovic, Judge [F] and attorney [E], the assistant solicitor to the City of [B]. This "theory" is obviously unfounded and chairman Unkovic readily testified that he did not speak to any member of the Office of Disciplinary Counsel concerning respondent or these proceedings. Somehow or other he tries to involve attorney [C] into the situation because he was the president of the [   ] Bar Association and is a member of a large law firm.

Another statement made by respondent in the argument was that he was entitled to a panel from the "vicinage." He misquotes the fifth and fourteenth amendments to the Constitution of the United States and Article I, sections 1, 9 and 25 of the Pennsylvania Constitution and confuses the disciplinary proceedings with a jury trial. His further complaint against chairman Pearlstine and member Henry is that they are Bar Association oriented and somehow this is supposed to militate against the interests of respondent. Misconduct of a

lawyer and violation of the disciplinary rules is no different in [H] County than it is in Lebanon or Montgomery County. Respondent's complaint that he was not judged or tried by lawyers who practiced law in the County of [H] is indeed preposterous.

The second argument, one of sheer sophistry, had to do with Charge IV, involving the filing of a property claim captioned "Claims of Goods, claim for [   ], Inc. as Landlord", filed under lease signed by respondent "for claimant" in an execution proceeding issued on behalf of the City of [B] against respondent and under the authority of which the sheriff of [H] County levied upon personal property belonging to respondent located in his law office. After several specious arguments that he had a right to file the claim on behalf of the landlord and since the landlord did not object this seemed to be some ratification of this authority, he finally admitted in an argument that he was really representing himself and that it was his method of preserving the integrity of his personal property from the sheriff's sale and also some alleged television showing of the sale which was going on. He felt perfectly justified in resorting to this illegal action in order to preserve his personal property, which according to the testimony had a value of $300, since his files were not levied upon. The document which was filed was patently false and was the kind of professional misconduct that could never be excused because of any so-called necessity.

Respondent attacked everything conceivable that might be attacked, including the disciplinary system, the method of appointing the hearing committee, the challenge to the panel and the myriad exceptions and motions filed by respondent which are best described as "many novel theories

relating to the practice of law" amplified in the recommended disposition set forth in the hearing committee's report.

An examination of respondent's brief on exceptions and his brief before the hearing committee, clearly demonstrates respondent's use of tactics, including persistent attacks on the disciplinary system and all its components as his method of answering charges against him. He stressed the point in argument that while he is a "maverick lawyer" he would "give up his license" before conforming to conventional practice.

The hearing committee recommended "Public Censure by the Supreme Court with . . . Probation (PRDE 85(3))" as the appropriate discipline to be meted out to respondent.

The hearing committee in its discussion concerning Charge III, concluded that "Respondent's personal references may have been in incredibly bad taste, may even have been maliciously employed, but we do not conclude that they represent disciplinary violations." We agree with this conclusion and conclude that it is for the courts in responding to personal attacks by counsel directly before it, to control the conduct of counsel appearing before the court.

As to Charges I, II, and IV, the record amply supports the findings of fact, leading to conclusions of law, that respondent violated the disciplinary rules set forth above.

## V. RECOMMENDED DISPOSITION OF THE CASE

The disciplinary board at its meeting held on December 9, 1978, voted to privately reprimand re-

spondent for his misconduct. The recommendation of the hearing committee to impose probation was not followed.

---

Mr. Reath and Mr. McDonnell did not participate in the adjudication. Mr. Unkovic abstained.

Because respondent was unwilling to have the matter concluded by private reprimand, the board pursuant to Rule 208(a)(2)(iii) submitted the record to the Chief Justice on March 4, 1979. By order of the court dated April 26, 1979, the recommendation for private reprimand was affirmed.