# IN RE RUFFALO.

No. 73. Argued March 4, 1968.—Decided April 8, 1968.

*Craig Spangenberg* argued the cause and filed briefs for petitioner.

*Thomas V. Koykka* argued the cause for the Ohio State and Mahoning County Bar Associations. With him on the brief were *Samuel T. Gaines, Walter A. Porter, P. Paul Pusateri* and *Henry C. Robinson.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioner was ordered indefinitely suspended from the practice of law by the Supreme Court of Ohio on two findings of alleged misconduct. *Mahoning County Bar Assn.* v. *Ruffalo,* 176 Ohio St. 263, 199 N. E. 2d 396. That order became final and is not here on review. The Federal District Court, after ordering petitioner to show cause why he should not be disbarred, found that there was no misconduct. *In re Ruffalo,* 249 F. Supp. 432 (D. C. N. D. Ohio). The Court of Appeals likewise ordered petitioner to show cause why he should not be stricken from the roll of that court on the basis of Ohio's disbarment order. The majority held that while one of the two charges might not justify discipline, the other one did; and it disbarred petitioner from practice in that Court. 370 F. 2d 447 (C. A. 6th Cir.). The dissenting judge thought that neither charge justified suspension from practice.[1] *Id.,* at 460. The case is here on a writ of certiorari. 389 U. S. 815.

---

[1] After the Court of Appeals decision disbarring petitioner, the District Court, which had deferred a final order pending the decision of the Court of Appeals, suspended petitioner from practice in the District Court. The District Court judge said he had an "abiding conviction" that his prior decision finding no grounds for suspension was correct but concluded that orderly administration of justice required the District Court to defer to its Court of Appeals. The District Court's order is not before us for review.

Petitioner was an active trial lawyer who handled many Federal Employers' Liability Act cases. The Association of American Railroads investigated his handling of claims and referred charges of impropriety to the President of the Mahoning County Bar Association who was also local counsel for the Baltimore & Ohio Railroad Co. See *In re Ruffalo*, 249 F. Supp. 432, 435, n. 3. The Mahoning County Bar Association then filed the charges against petitioner.

In the state court proceedings, upon which the decision of the Court of Appeals relied (see Rule 6 (3) of the United States Court of Appeals for the Sixth Circuit), the Ohio Board of Commissioners on Grievances and Discipline originally charged petitioner with 12 counts of misconduct. Charges Nos. 4 and 5 accused petitioner of *soliciting* FELA plaintiffs as clients through an agent, Michael Orlando. At the hearings which followed, both Orlando and petitioner testified that Orlando did not solicit clients for petitioner but merely *investigated* FELA cases for him. It was brought out that some of Orlando's investigations involved cases where his employer, the Baltimore & Ohio Railroad, was defendant. Immediately after hearing this testimony, the Board, on the third day of hearings, added a charge No. 13 against petitioner based on his hiring Orlando to *investigate* Orlando's own employer. Counsel for petitioner objected, stating:

> "Oh, I object to that very highly. There is nothing morally wrong and there is nothing legally wrong with it. . . . When does the end of these amendments come? I mean the last minute you are here, [counsel for the county Bar Association] may bring in another amendment. I think this gentleman [petitioner] has a right to know beforehand what the charges are against him and be heard on those charges."

Motion to strike charge No. 13 was denied, but the Board gave petitioner a continuance in order to have time to respond to the new charge.

The State Board found petitioner guilty of seven counts of misconduct, including No. 13. On review, the Supreme Court of Ohio found the evidence sufficient to sustain only two charges, one of them being No. 13, but concluded that the two violations required disbarment. The only charge on which the Court of Appeals acted was No. 13, which reads as follows:

"That Respondent did conspire with one, Michael Orlando, and paid said Michael Orlando moneys for preparing lawsuits against the B. & O. Railroad, the employer of said Michael Orlando, during all the periods of time extending from 1957 to July of 1961, well knowing that said practice was deceptive in its nature and was morally and legally wrong as respects the employee, Michael Orlando, toward his employer, the B. & O. Railroad Company."

Though admission to practice before a federal court is derivative from membership in a state bar, disbarment by the State does not result in automatic disbarment by the federal court. Though that state action is entitled to respect, it is not conclusively binding on the federal courts. *Theard* v. *United States*, 354 U. S. 278, 281–282.

Petitioner, active in the trial of FELA cases, hired a railroad man to help investigate the cases. He was Orlando, a night-shift car inspector for the Baltimore & Ohio Railroad Co. There was no evidence that Orlando ever investigated a case in the yard where he worked as inspector. There was no evidence that he ever investigated on company time. Orlando had no access to confidential information; and there was no claim he ever revealed secret matters or breached any trust. It is clear

from the record that petitioner chose a railroad man to help him investigate those claims because Orlando knew railroading.

One federal guidepost in this field is contained in § 10 of the Federal Employers' Liability Act, as amended, 53 Stat. 1404, 45 U. S. C. § 60, which was enacted to encourage employees of common carriers to furnish information "to a person in interest," as to facts incident to the injury or death of an employee.[2]

The Ohio Supreme Court, however, concluded that "one who believes that it is proper to employ and pay another to work against the interests of his regular employer is not qualified to be a member of the Ohio Bar." 176 Ohio St., at 269, 199 N. E. 2d, at 401.

We are urged to hold that petitioner's efforts to conceal this employment relationship and the likelihood of a conflict of interest require the federal courts to respect the decision of the Ohio Supreme Court as being within the range of discretion.

---

[2] 45 U. S. C. § 60 provides in part:

"Any contract, rule, regulation, or device whatsoever, the purpose, intent, or effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee, shall be void, and whoever, by threat, intimidation, order, rule, contract, regulation, or device whatsoever, shall attempt to prevent any person from furnishing voluntarily such information to a person in interest, or whoever discharges or otherwise disciplines or attempts to discipline any employee for furnishing voluntarily such information to a person in interest, shall, upon conviction thereof, be punished by a fine of not more than $1,000 or imprisoned for not more than one year, or by both such fine and imprisonment, for each offense: *Provided,* That nothing herein contained shall be construed to void any contract, rule, or regulation with respect to any information contained in the files of the carrier, or other privileged or confidential reports."

We do not pursue that inquiry. Nor do we stop to inquire whether the proceeding was defective because the Bar Association, the agency that made the charges against petitioner, was headed by counsel for the Baltimore & Ohio Railroad Co. against which petitioner filed several of his claims. For there is one other issue dispositive of the case which requires reversal.

As noted, the charge (No. 13) for which petitioner stands disbarred was not in the original charges made against him. It was only after both he and Orlando had testified that this additional charge was added. Thereafter, no additional evidence against petitioner relating to charge No. 13 was taken. Rather, counsel for the county bar association said:

> "We will stipulate that as far as we are concerned, the only facts that we will introduce in support of Specification No. 13 are the statements that Mr. Ruffalo has made here in open court and the testimony of Mike Orlando from the witness stand. Those are the only facts we have to support this Specification No. 13."

There was no *de novo* hearing before the Court of Appeals. Rather, it rested on the Ohio court's record and findings:

> "We have before us, and have reviewed, the entire record developed by the Ohio proceedings, but think it proper to dispose of the matter primarily upon the charges on which the Ohio Court disciplined Mr. Ruffalo. The facts as to these are not in dispute. We consider whether we find insupportable the Ohio Court's determination that such facts disclosed unprofessional conduct warranting the discipline imposed and whether they warrant similar discipline by us." 370 F. 2d, at 449.

The Court of Appeals proceeded to analyze the "admitted facts of Charge No. 13" as found by the Ohio court and the Ohio court's ruling on those facts. *Id.,* at 450–452.

If there are any constitutional defects in what the Ohio court did concerning Charge 13, those defects are reflected in what the Court of Appeals decided. The Court of Appeals stated:

> "We do not find in the record of the state proceedings, 'Such an infirmity of proof as to the facts found to have established the want of . . . [Ruffalo's] fair private and professional character' to lead us to a conviction that we cannot, consistent with our duty, 'accept as final the conclusion' of the Supreme Court and the Ohio bar." *Id.,* at 453.

We turn then to the question whether in Ohio's procedure there was any lack of due process.

Disbarment, designed to protect the public, is a punishment or penalty imposed on the lawyer. *Ex parte Garland,* 4 Wall. 333, 380; *Spevack* v. *Klein,* 385 U. S. 511, 515. He is accordingly entitled to procedural due process, which includes fair notice of the charge. See *In re Oliver,* 333 U. S. 257, 273. It was said in *Randall* v. *Brigham,* 7 Wall. 523, 540, that when proceedings for disbarment are "not taken for matters occurring in open court, in the presence of the judges, notice should be given to the attorney of the charges made and opportunity afforded him for explanation and defence." Therefore, one of the conditions this Court considers in determining whether disbarment by a State should be followed by disbarment here is whether "the state procedure from want of notice or opportunity to be heard was wanting in due process." *Selling* v. *Radford,* 243 U. S. 46, 51.

In the present case petitioner had no notice that his employment of Orlando would be considered a disbarment offense until *after* both he and Orlando had testified

at length on all the material facts pertaining to this phase of the case. As Judge Edwards, dissenting below, said, "Such procedural violation·of due process would never pass muster in any normal civil or criminal litigation."[3] 370 F. 2d, at 462.

These are adversary proceedings of a quasi-criminal nature. Cf. *In re Gault,* 387 U. S. 1, 33. The charge must be known before the proceedings commence. They become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused. He can then be given no opportunity to expunge the earlier statements and start afresh.[4]

How the charge would have been met had it been originally included in those leveled against petitioner by the Ohio Board of Commissioners on Grievances and Discipline no one knows.

---

[3] Rule 15 (a), Federal Rules of Civil Procedure, provides in part:

"A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

[4] The Ohio State Bar Association and Mahoning County Bar Association, *amici curiae* in support of the order of the Court of Appeals, argue that there was no due process violation because the State Board gave petitioner several months to respond to charge No. 13. This argument overlooks the fact that serious prejudice to petitioner may well have occurred because of the content of the original 12 specifications of misconduct. He may well have been lulled "into a false sense of security" (*Bouie* v. *City of Columbia,* 378 U. S. 347, 352) that he could rebut charges Nos. 4 and 5 by proof that Orlando was his investigator rather than a solicitor of clients. In that posture he had "no reason even to suspect" (*ibid.*) that in doing so he would be, by his own testimony, irrevocably assuring his disbarment under charges not yet made.

This absence of fair notice as to the reach of the grievance procedure and the precise nature of the charges deprived petitioner of procedural due process.

*Reversed.*

MR. JUSTICE BLACK, for reasons stated in the Court's opinion and many others, agrees with the Court's judgment and opinion.

MR. JUSTICE STEWART took no part in the decision of this case.

MR. JUSTICE HARLAN, concurring in the result.

I see no need to decide whether the notice given petitioner of the charge that formed the basis of his subsequent federal disbarment was adequate to afford him constitutional due process in the state proceedings. For I think that *Theard* v. *United States,* 354 U. S. 278, leaves us free to hold, as I would, that such notice should not be accepted as adequate for the purposes of disbarment from a federal court. On that basis, I concur in the judgment of the Court.

MR. JUSTICE WHITE, with whom MR. JUSTICE MARSHALL joins, concurring in the result.

The Court reverses petitioner's disbarment by the Court of Appeals for the Sixth Circuit because petitioner had inadequate notice prior to his earlier state disbarment proceeding of the charges which the Mahoning County Bar Association was bringing against him at that proceeding. The state disbarment, however, is not before us. We denied a petition for certiorari seeking review of it. *Ruffalo* v. *Mahoning County Bar Assn.,* 379 U. S. 931 (1964). Our writ in the instant case extends only to petitioner's disbarment by the Court of Appeals for the Sixth Circuit. The question therefore

is whether the defective notice in petitioner's state disbarment proceeding so infected that federal proceeding that justice requires reversal of the federal determination.

In answering that question we must inquire into the nature of the proceeding that took place in the Court of Appeals. That court was obligated to determine for itself the facts of the attorney's conduct and whether that conduct had been so grievous as to require disbarment. *Theard* v. *United States,* 354 U. S. 278 (1957). The Court of Appeals asked petitioner to "show cause if any he has . . . why he should not be stricken from the roll of counsel of this Court." In response to that order petitioner filed a response and brief. The Ohio State Bar Association filed a brief also, urging petitioner's disbarment. The cause was argued orally to a panel of the Court of Appeals.

In his brief and oral argument, petitioner did not take issue with the determinations of fact that had been made by the Ohio Supreme Court. The Court of Appeals gave petitioner a full opportunity to assert that the state court had not accurately determined the facts of his conduct—and to assert, had he wished to do so, that the late point at which he learned that employing car inspector Orlando would be one ground for disbarment had prejudiced the factual record formed in the state court. Petitioner, not disputing the lower court's factual conclusions, made no such objection.[1] Instead petitioner's response in the Court of Appeals was that the agreed facts of his conduct were not a sufficient basis for disbarment. In reaching its conclusion on that question the Court of Appeals properly gave weight to the views of the state court judges who had passed on the issue. Petitioner, however, had full and fair opportunity to

---

[1] Indeed, petitioner did not suggest to this Court, as a reason for reversal, that he had learned of the ground for disbarment too late in the state court proceeding.

put to the Court of Appeals his contrary view.  I must therefore conclude that no procedural defect supports reversal of the decision of the Court of Appeals, and that the asserted defect relied upon by the Court, since not raised by petitioner below or here, is not properly before us.  I am therefore constrained to deal with the central question posed by this case, whether it was proper for the Court of Appeals, in making the independent determination of petitioner's fitness to remain a member of its bar mandated by *Theard* v. *United States, supra,* to disbar petitioner for having hired an employee of the B. & O. Railroad to investigate facts relevant to damage suits against the railroad brought by other employees who had retained petitioner to represent them.  We must determine whether the Court of Appeals satisfied its duty "not to disbar except upon the conviction that, under the principles of right and justice, ·[it is] constrained so to do."  *Selling* v. *Radford*, 243 U. S. 46, 51 (1917).

A relevant inquiry in appraising a decision to disbar is whether the attorney stricken from the rolls can be deemed to have been on notice that the courts would condemn the conduct for which he was removed.  The Court of Appeals for the Sixth Circuit had provided petitioner and the other members of its bar with a general standard for disbarment:

> "When it is shown to the court that any member of its bar has been suspended or disbarred from practice in any other court of record, or has been guilty of conduct unbecoming a member of the bar of the court, the member will be forthwith suspended from practice before the court and notice of his suspension will be mailed to him, and unless he shows good cause to the contrary within 40 days thereafter, he will be further suspended or disbarred

from practice before the court." Rule 6 (3), Court of Appeals for the Sixth Circuit.[2]

Even when a disbarment standard is as unspecific as the one before us, members of a bar can be assumed to know that certain kinds of conduct, generally condemned by responsible men, will be grounds for disbarment. This class of conduct certainly includes the criminal offenses traditionally known as *malum in se*. It also includes conduct which all responsible attorneys would recognize as improper for a member of the profession.

The conduct for which the Court of Appeals disbarred petitioner cannot, however, be so characterized. Some responsible attorneys, like the judge who refused to order petitioner disbarred from practice in the Northern District of Ohio, 249 F. Supp. 432 (1965), would undoubtedly find no impropriety at all in hiring a railroad worker, a man with the knowledge and experience to select relevant information and appraise relevant facts, to "moonlight"—work on his own time—collecting data. On the other hand some, like the officials of the Mahoning County and Ohio State Bar Associations, would believe that encouraging a man to do work arguably at odds with his chief employer's interests is unethical. The

---

[2] The Court of Appeals did not apply its rule literally: "We should preliminarily observe that our own Rule 6 (3) . . . could be read as automatically striking from our roll of counsel the name of any lawyer disbarred in any court of record. It has been amended and we consider this matter in keeping with the requirements and admonitions of Theard v. United States, 354 U. S. 278, . . . and Selling v. Radford, 243 U. S. 46 . . . . These decisions forbid Federal Courts from acting in total reliance on a state judgment. We have before us, and have reviewed, the entire record developed by the Ohio proceedings, but think it proper to dispose of the matter primarily upon the charges on which the Ohio Court disciplined Mr. Ruffalo. The facts as to these are not in dispute." 370 F. 2d 447, 449 (1966) (note omitted).

appraisal of petitioner's conduct is one about which reasonable men differ, not one immediately apparent to any scrupulous citizen who confronts the question.[3] I would hold that a federal court may not deprive an attorney of the opportunity to practice his profession on the basis of a determination after the fact that conduct is unethical if responsible attorneys would differ in appraising the propriety of that conduct. I express no opinion about whether the Court of Appeals, as part of a code of specific rules for the members of its bar, could proscribe the conduct for which petitioner was disbarred.

---

[3] As the Court points out, there was no evidence before any of the state or federal courts which appraised petitioner's conduct that the man he employed had ever investigated a case in the yard where he worked, investigated on company time, or been given access to confidential railroad information.