BUTLER COUNTY BAR ASSOCIATION *v.* GREEN.
OHIO STATE BAR ASSOCIATION *v.* GREEN.

[Cite as Butler Cty. Bar Assn. *v.* Green (1988), 35 Ohio St. 3d 601.]

(D.D. Nos. 82-6 and 82-7—Decided January 6, 1988.)

The motion for rehearing is granted and the petition for reinstatement of F. Harrison Green to the practice of law is granted. (For earlier case, see [1982], 1 Ohio St. 3d 48, 1 OBR 92, 438 N.E. 2d 406.)

SWEENEY, LOCHER, DOUGLAS and H. BROWN, JJ., concur.

MOYER, C.J., HOLMES and WRIGHT, JJ., dissent.

DOUGLAS, J., concurring. I concur with the majority of this court in ordering the reinstatement of respondent, F. Harrison Green, to the practice of law in the state of Ohio. I write separately to express my reasons for concurring in this reinstatement and because of my concern with developments surrounding this matter that seem, at best, curious and remain unexplained. In addition, I believe the dissent herein portrays something less than an accurate and full picture of the facts of this case.

On July 21, 1982, this court indefinitely suspended respondent from the practice of law. On August 1, 1986, respondent filed a petition for reinstatement. I have reviewed this petition and I find that it comports, in all respects, with the requirements for reinstatement set forth in Gov. Bar R. V(25) *et seq.*

Pursuant to this petition, a hearing was held by the Board of Commissioners on Grievances and Discipline on March 31, 1987. Neither of the relators, the Butler County Bar Association or the Ohio State Bar Association, appeared before the board. The hearing was held with respondent and his counsel in attendance. Subsequently, on April 14, 1987, the board certified to this court a *unanimous* recommendation that respondent be reinstated to the practice of law.

At its hearing on March 31, 1987, the board had before it *all* the information referenced in the dissent. In addition, the record before the board contained affidavits of two attorneys in opposition to reinstatement and an affidavit of Disciplinary Counsel with a number of exhibits attached, some of which cover the *same* material mentioned in the dissent. Disciplinary Counsel did not, before either the board or this court, take a position for or against reinstatement. Finally, it is pertinent to note that the record reflects that just prior to its March 31 hearing, the board contacted the Butler County Bar Association, notwithstanding the association's nonappearance at the hearing, and was advised that the bar association opposed the reinstatement of respondent. Following all this inquiry, the board issued its *unanimous* recommendation of reinstatement. The matter was then forwarded by the board to this court.

On April 17, 1987, this court issued an order for any parties having objections to the board's recommendation to file those objections with the court on or before April 27, 1987. Apparently a letter was written by the Butler County Bar Association opposing respon-

dent's petition. I say "apparently" because such a letter was not part of the record when I reviewed the record in preparation for the court's discussion and vote. Certain members of the court sought a further delay to obtain additional information from "Butler County." Subsequently, the letter from the bar association, dated April 23, 1987, appeared. Significantly, it seems to me, from a due process standpoint, it is important to note that the letter from the bar association was never served on respondent or his counsel. Thus, no chance was given respondent to respond before this court issued, on July 8, 1987, its decision to deny respondent's petition for reinstatement. See 31 Ohio St. 3d 602, 31 OBR 489, 510 N.E. 2d 804.

Subsequent to our decision, and after respondent's counsel contacted the office of the clerk of this court and was supplied by the clerk's office with the letter which had been filed objecting to respondent's petition, counsel for respondent filed a motion and memorandum in support for reconsideration or rehearing. Supplemental memoranda in support were also filed on behalf of respondent.

I have thoroughly reviewed the motion and the memoranda in support. I am impressed with the material presented. The memoranda answer all the questions that arose and resulted in our original denial of reinstatement. I have also reviewed the letter from Judge Paul J. George (then of the Office of Disciplinary Counsel), dated July 9, 1986 and part of the record, which states that after investigation, it was determined that respondent (F. Harrison Green) was "* * * in full compliance with the Ohio Supreme Court order of July 21, 1982." Further, the case of *In re Ruffalo* (1968), 390 U.S. 544, 43 O.O. 2d 459, strongly supports respondent on the point in contention.

Against the foregoing scenario of events we have the statements (affidavits) of sixteen prominent citizens of the state of Ohio. These persons include attorneys, civic-leaders, businessmen, medical professionals, a former United States Congressman, a university professor, a member of the clergy and a former president of Miami University, Oxford, Ohio.

Former Congressman Thomas Kindness says that he has known the respondent for approximately fifteen years. Congressman Kindness further states that "* * * the Respondent is honest and of good moral character." F. G. Ferris, D.V.M. states that in his opinion "* * * the Respondent is honest, trustworthy, and of good moral character." Miami University Professor Emeritus Harry Armogida, a member of the bar of this court, says that he, "* * * based on his conversations and contact with him [respondent] has always been favorably impressed with the Respondent's knowledge of the law and attitude as an attorney." Professor Armogida further states that "* * * he has faith in the Respondent as a practicing attorney, and has no reason to disbelieve his honesty or trustworthiness." Rev. R. John Harris recites in his affidavit that "[i]t is the opinion of the affiant that the Respondent is truthful, scrupulously honest, and very trustworthy." The former president of Miami University, Phillip Shriver, says in his affidavit that "[i]n the affiant's opinion, the Respondent is honest, trustworthy and of good moral character."

The foregoing are only excerpts and samples of what is contained in the file. I do not know any of the persons who are in any way involved in this case. I do know, however, what the file and record consist of and I know further that we have received a *unanimous* recommendation of the Board of

Commissioners on Grievances and Discipline (a creature of this court and our designated fact-finding body) that respondent, F. Harrison Green, be reinstated to the practice of law in the state of Ohio.

For whatever reasons, this case has taken a long and tortured road and it is now time for us to decide the issue. I, therefore, concur with the majority of my brethren in ordering reconsideration of our July 8 decision, and then reinstatement of the petitioner-respondent. Let him among us who has not sinned cast the first stone.

MOYER, C.J., dissenting. I must respectfully disagree with the action of the majority of this court in reconsidering our previous decision denying petitioner's reinstatement to practice law. Petitioner was indefinitely suspended from the practice of law on July 21, 1982. For details of that decision, see (1982), 1 Ohio St. 3d 48, 1 OBR 92, 438 N.E. 2d 406. It is axiomatic that when a lawyer is indefinitely suspended from the practice of law he or she no longer has the authority "to act as an attorney after the effective date of * * * [the] order" of the court. See Gov. Bar R. V(22)(b)(i). The disqualified attorney is also required to file an affidavit showing compliance with the order of the court with the clerk of this court and the Disciplinary Counsel. Gov. Bar R. V(22)(b)(vi). The first question that must be asked when this court disposes of a petition for reinstatement of a suspended attorney is whether the attorney actually discontinued his or her practice of law upon being ordered to do so by the court. My review of the record in this case causes me to conclude that petitioner simply did not comply with this court's order of indefinite suspension.

One of the petitioner's responsibilities following his suspension is to notify the federal courts of his suspension in compliance with Rule II(A) of the Model Federal Rules of Disciplinary Enforcement which it is asserted were readopted by Order 81-1 in the United States District Court for the Southern District of Ohio. The clerk of this court also was under a duty to and, apparently, did notify the Clerk of the Southern District Court of Ohio of petitioner's suspension. However, the petitioner did not notify the district court clerk of his suspension. The evidence in the record indicates that the district court clerk took no action in response to notification by the clerk of this court. Petitioner was finally suspended from practice in the United States District Court for the Southern District in August 1985, after he appeared as an attorney in a case in that court and his suspension by the Ohio Supreme Court was brought to the attention of the district court clerk and the judge presiding in the case.

Petitioner relies upon *In re Ruffalo* (1968), 390 U.S. 544, 43 O.O. 2d 459, in support of his argument that he was permitted to practice in the federal court until suspended from practice by that court. The problem with his argument is that, by his own admission before the board of commissioners, he stated that Financial General Agency, Inc. gave him "the name of general counsel" and that he gave advice to the president of the company in his capacity as general counsel on federal matters. He apparently was given the title of general counsel, even though he stated that he could not hold himself out as an attorney in relation to Ohio legal matters. In a deposition of petitioner in the case in which he appeared in district court, taken on January 21, 1986, when asked to state his occupation, he said, "I am General Counsel for Financial General and I'm also President of ProSports Management,

Inc.," that approximately fifteen to twenty percent of his time was devoted to his general counsel work, and that he was on a retainer with the company. He also stated that he reviewed certain contractual matters and that he was "looking at * * * litigation type things" and that he had reviewed them and "given them advice." It should be emphasized that the deposition in which that testimony was elicited was offered before the board of commissioners *after* petitioner was suspended from practice in the United States District Court. Consistent with petitioner's own statement is the affidavit of an individual who supported petitioner's reinstatement to the bar. The affidavit of March 30, 1987 states, *inter alia:* "2. Since 1982, the Respondent [the petitioner herein] has represented and served as a legal advisor for a group of which the affiant is a member."

I have no reason to doubt petitioner's honesty or moral character. There are impressive affidavits in the record attesting to those characteristics. However, I do doubt that petitioner understood the significance or importance of an order of this court suspending a member of our profession from the practice of law. By his own admissions and by the statements of others, he clearly continued to practice law after being suspended from the practice by this court and by the United States District Court. To reinstate a person who has not demonstrated that he understands the significance of such an order of two courts is to make a mockery of those orders.

My review of the entire record causes me to conclude that petitioner should not be reinstated until he has demonstrated for a reasonable period of time that he has been in compliance with the order of this court.

HOLMES and WRIGHT, JJ., concur in the foregoing dissenting opinion.