In re Richard M. JACOBS, Movant.

No. 66458.

Supreme Court of Missouri,
En Banc.

July 31, 1990.

Roy D. Simon, Jr., Washington University, St. Louis, for movant.

John M. Scully, Staff Counsel, Missouri Bar Admin., Sedalia, Francis M. Hanna, University of Missouri–KC Law School, Kansas City, for informant.

HOLSTEIN, Justice.

Movant, Richard M. Jacobs, seeks reinstatement of his license to practice law in Missouri. On November 20, 1984, pursuant to movant's request, this Court ordered surrender of movant's license until further order of the Court. On December 4, 1984, movant's license was surrendered. Since then movant has filed pleadings seeking reinstatement on no less than four separate occasions, the first being December 20, 1984. As was ordered on each previous occasion, reinstatement is denied.

## I.

Movant was licensed to practice law in Missouri in 1973. In 1981, he was charged with two felony offenses in St. Louis County. Movant's attorneys in the criminal cases referred him to psychiatrist Maria Manion, M.D., for a psychiatric evaluation.

Dr. Manion performed her evaluation over the course of six meetings with movant beginning April 29, 1982, and concluding in August of that year. During their meetings, she noted Jacobs attempted to dictate the rules of the interview to her. He appeared to be "controlling and defensive." She found "insufficient information to make a definite diagnosis," but concluded that movant seemed to fit the diagnostic category known as narcissistic personality disorder. Among a long list of characteristics she found in movant to be consistent with the disorder were that he carried feelings of entitlement, engaged in interpersonal exploitation and had little or no capacity to empathize with others. Dr. Man-

ion recommended therapy in a "structured fashion," followed by regular supervision and steady involvement in psychotherapy.

Based on Dr. Manion's report, movant's attorneys in the criminal case negotiated an agreement that movant would surrender his license to practice law in exchange for dismissal of the felony charges.

Movant submitted his first motion to surrender his license on July 15, 1983. However, the motion did not mention Dr. Manion's report. Instead, movant relied on the report of Larry Kiel, a psychologist.[1] Dr. Kiel's report, dated April 11, 1983, declared that movant was suffering from an acute stress reaction arising from an adversarial relationship with the Missouri Bar Administration. Kiel's first report suggested movant have "a couple of weeks" away from his practice. Later, he was to modify that report to recommend that movant have "an indefinite period" away from the practice. Kiel's report indicated that movant had embarked on a "course of psychotherapy."

Shortly after movant's first motion to surrender his license was filed, an assistant prosecuting attorney for St. Louis County informed the General Chairman of the Bar Committee by letter that movant's surrender of his license was movant's part of a reciprocal agreement by the prosecutor to drop the felony charges. On December 20, 1983, this Court overruled Jacobs' first motion to surrender his license.

On October 10, 1984, movant filed a second pleading entitled "Motion for Voluntary Transfer of License to Practice Law to Inactive Status for Medical Reasons, or in the alternative, to Voluntarily Surrender License to Practice Law for Medical Reasons" with this Court. On that occasion, the motion was accompanied by the earlier evaluation of Dr. Manion. The motion asserted that it was not based upon any "coerced prosecutorial agreement," and the only reason for failing to mention the criminal charges in the previous motion was that they were "collateral to, and not the basis of, the motion." The motion averred that

---

**1.** Kiel held a Master's degree at the time of his initial evaluation of movant, but later earned a Ph.D. in psychology.

movant continued to suffer "certain medical problems which have been disruptive to ... his ability to presently continue in the practice of law."

On November 20, 1984, the Court accepted the surrender of movant's license to practice law and ordered that the license be suspended "for medical reasons based on mental infirmity," as described in Rule 5.22. Movant was ordered to notify his clients and counsel pursuant to Rule 5.21. On December 4, 1984, the license was surrendered. On December 20, 1984, movant filed his first motion for reinstatement of his license. The motion was accompanied by the report of psychiatrist James Eyerman, M.D. In his report, Dr. Eyerman disagreed with Dr. Manion's diagnosis. His examination revealed no definite diagnosis and no therapy was indicated. He urged that movant "be permitted to immediately return to his professional practice." That motion was referred to the Advisory Committee of the Missouri Bar. A hearing was held, the Advisory Committee recommended denial of reinstatement, and reinstatement was denied on August 7, 1985.

Similar motions were filed on September 26, 1985, and on June 26, 1987. On each occasion the motion was referred to the Advisory Committee, a hearing was held, a recommendation was made that reinstatement be denied, and the Court denied reinstatement.

The most recent motion was filed on August 11, 1988. That motion was titled, "Motion to Expedite Consideration of Motion to Review United States Supreme Court's Decision as it applies to this Cause and Give Further Consideration in Light of said Decision to Petitioner's Motion for Reinstatement." No motion for reinstatement was then pending. Nevertheless, this Court elected to treat the latest pleading as a fourth motion for reinstatement. A Special Master was appointed, a hearing conducted and a recommendation made by the Special Master that reinstatement be denied. In addition, the Special Master recommended that disbarment proceedings be commenced immediately.

## II.

As recognized by movant, the Advisory Committee and the Special Master, this is not a disciplinary proceeding. Movant's license was surrendered and accepted by this Court pursuant to Rule 5.22. This proceeding is a reinstatement proceeding governed by Rule 5.22(d) which, in part, provides: "Upon such application [for reinstatement] this Court may take or direct such action as it deems necessary or proper,...." As part of the Court's order appointing the Special Master, the Court noted that the burden of showing movant was fit to practice law lies with him. As with other adversary proceedings, the burden of proof in this case rests upon the party who, as determined from the pleadings, asserts the affirmative of an issue, and remains there until termination of the action. *Brown v. Sloan's Moving and Storage Co.*, 274 S.W.2d 310, 313 (Mo.1954).

While this is not a disciplinary proceeding, the Master's report functions essentially the same as in a disciplinary proceeding. The Court is not bound by the findings and conclusions of the Master. *In re Littleton*, 719 S.W.2d 772, 775 (Mo. banc 1986). The report is advisory only. *In re Gamblin*, 458 S.W.2d 321, 323 (Mo. banc 1970). Because the first three points in movant's brief take issue with the Master's factual findings, and because we are not bound by those factual findings, we do not address them.

## III.

At the hearing, the Master took judicial notice of the transcripts of evidence presented during prior reinstatement hearings. Movant's fourth point claims the Master and presumably this Court are barred from considering such evidence because of Rule 57.07, relating to the use of depositions, and because the transcripts are tainted by evidence of violations of disciplinary rules of which movant was not given due process notice prior to the hearing.

The provisions of Rule 57.07 permit the use of depositions for specified purposes, none of which exist here. However,

the transcripts of prior reinstatement hearings are not depositions. Rule 57 is therefore inapplicable. The Supreme Court may take judicial notice of its own records for proper purposes. *In re Murphy,* 732 S.W.2d 895, 902 (Mo. banc 1987). The transcripts are part of this Court's records involving the same issues and the same parties. One proper purpose for taking judicial notice of our own records is if those records contain relevant, admissible evidence.

■ Movant's due process argument is founded on *In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). Ruffalo, an attorney, had been disbarred by the state of Ohio based upon two charges of misconduct, one of which had been added after a hearing during which Ruffalo had testified and called witnesses. After the disbarment from state courts was accomplished, proceedings were commenced to disbar Ruffalo from federal practice. The U.S. Court of Appeals found only one ground for disbarment, the one which had been added after the original hearing. The U.S. Supreme Court reversed the federal disbarment because disbarment imposes a punishment on a lawyer; before a lawyer may be punished he must be given fair notice of the charges against him. 390 U.S. at 550, 88 S.Ct. at 1225. Unlike *Ruffalo,* this is a reinstatement proceeding in which movant has the burden of proving his fitness to practice law. Unlike *Ruffalo,* Jacobs' suspension was voluntary. To this point, he has not been charged with any disciplinary violations that might result in discipline. Nothing in *Ruffalo* requires notice of evidence to be presented at a hearing where no discipline or punishment is threatened and the burden of proof is on the party complaining. *Ruffalo* is inapposite.

The transcripts of the prior hearings are highly relevant. The evidence contained in the transcripts is not considered for the purpose of imposing any form of discipline or punishment, but to respond to movant's claim of fitness to practice law. Movant was present at the earlier hearings, and he had the opportunity to cross-examine the witnesses. Movant was aware of the content of the transcripts long before the most recent hearing and was free in this hearing to call witnesses to contradict or refute evidence presented in the earlier hearings. Movant's due process claim is meritless, and there is no fundamental unfairness in considering the evidence presented at the prior hearings.

## IV.

■ The reason for the original suspension of movant's license was his mental condition. Accordingly, the primary focus of this proceeding is to determine if the cause of the suspension has abated. The movant, the Advisory Committee and this Court all relied on Dr. Manion's findings in concluding there was a valid medical basis for the surrender and suspension of the license in 1984. In addition to her report, we have her testimony at the first reinstatement proceeding in 1985. She testified unequivocally that movant's personality disorder creates a medical impediment preventing him from returning to the practice of law. She described movant as defensive, tending to distort reality, and having difficulty recognizing others' needs. She also reiterated the need for movant to undergo therapy.

Dr. Paul Sheffner also testified at the first reinstatement hearing in 1985. Dr. Sheffner was hired by the Advisory Committee to examine movant. He did so on March 21 and April 18, 1985. He testified that in his opinion, movant had no psychiatric disorder in December of 1984, the time of movant's request for suspension for medical reasons.

Movant relied primarily on the medical reports and testimony of Dr. Kiel and Dr. Eyerman. Dr. Kiel testified that when his first report was written in March of 1983, he had not been informed of the criminal indictments. He also stated he never really changed his mind about recommending a "couple of weeks" away from the law practice, but made the change in his report at movant's request. Strangely, Dr. Kiel testified that when he evaluated movant in March of 1983 and on all later occasions,

movant had no psychological disorder that would prevent him from practicing law. According to Dr. Kiel, the reason for preparing the report recommending a leave from the practice of law was movant's claim that in order to take time off from the law practice, movant was required to have his license suspended. Dr. Kiel also admitted in his testimony that the "course of psychotherapy" referred to in his report consisted only of some suggestions given to movant on how to handle stress.

Dr. Kiel referred movant to Dr. Eyerman. Dr. Eyerman saw movant on December 3, 1984, and at the same time reviewed Dr. Manion's report. On that day he concluded movant had no psychiatric impediment and that Dr. Manion's opinion was inaccurate. Dr. Eyerman's report, dated December 18, 1984, and correspondence to the Court during the following year are unusual. They depart from the traditional clinical format of a psychiatric evaluation. The documents bear the distinct imprint of an advocate, and for good reason. Although Dr. Eyerman edited them, movant actually prepared some of Eyerman's reports and letters submitted in support of reinstatement. Dr. Eyerman's reports related movant's emotional problems to his continued suspension. The reports never mentioned that the suspension was voluntary or connected the suspension to the dismissal of the felony charges. In his testimony, Dr. Eyerman said he did not consider the criminal charges relevant to movant's emotional condition.

The facts surrounding the reports and testimony of Dr. Kiel and Dr. Eyerman tend to discredit their reliability as witnesses. More importantly, that evidence suggests that movant has successfully manipulated Drs. Kiel and Eyerman to assist him in achieving his goals and suggests that movant continues to suffer from the same self-serving, narcissistic psychological disorder recognized by Dr. Manion.

Dr. Manion's findings and recommendation for therapy, coupled with movant's total failure to obtain any significant therapy for a personality disorder that disabled him from practicing law, is a sound basis for rejecting this most recent effort at reinstatement. Movant has not sustained his burden of persuading the Court that he is entitled to reinstatement.

## V.

█ In this case, there is evidence that, contrary to the assertion in his motion to surrender his license, movant at no time believed that he suffered from a disabling mental or physical condition and that his motion to surrender his license was intended to mislead the Court. Specifically, the evidence shows that the second motion to surrender movant's license misrepresented that the motion was not part of an agreement to avoid criminal prosecution. There is also evidence in this record that after his suspension, movant advertised his law practice in a telephone directory, expressly representing that he was licensed to practice in Missouri and had a law office in this state. There is evidence that during the suspension, movant had matters pending with clients in Missouri courts and he failed to notify clients of the suspension, failed to deliver property to them to which they were entitled, failed to refund unearned fees and failed to notify opposing counsel or file proof with this Court as to compliance with Rule 5.21. While such evidence may form the basis of some future disbarment proceeding, it is not the basis for denying reinstatement.[2] In this proceeding the conduct is noted only as a further demonstration of the accuracy of Dr. Manion's observations regarding movant's personality disorder.

## VI.

Accordingly, it is ordered that movant's motion for reinstatement to practice law in Missouri be denied. For a period of one year, no motion for reinstatement will be considered unless accompanied by the report of a psychiatrist showing movant has

---

**2.** Disability due to mental infirmity does not prevent commencement of a disciplinary proceeding or disbarment. *See* Rule 5.22(c).

completed not less than six months of regularly supervised psychiatric therapy. Any future motion shall be accompanied by movant's affidavit setting forth the names and addresses of all physicians, psychologists, psychiatrists or hospitals who have examined or treated movant during his suspension and by a consent signed by movant for each physician, psychologist, psychiatrist or hospital to divulge information and records regarding treatment or examination. Rule 5.22.

ROBERTSON, RENDLEN, HIGGINS, COVINGTON and BILLINGS, JJ., and WEBBER, Special Judge, concur.

BLACKMAR, C.J., not sitting.