990 F.2d 1377
 301 U.S.App.D.C. 107
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Leonard Sheldon KAPLAN, Appellant,
v.
COMMITTEE ON ADMISSION, UNITED STATES TAX COURT, Appellee.
 No. 92-1070.
 United States Court of Appeals, District of Columbia Circuit.
 March 26, 1993.
Rehearing Denied April 19, 1993.
 
 Before EDWARDS, SENTELLE, and HENDERSON, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on an appeal from the United States Tax Court and was argued pro se. The court has determined that the issues presented occasion no need for a published opinion. See: D.C.Cir.Rule 14(c). It is
 
 
 2
 ORDERED and ADJUDGED by this court that the order of the United States Tax Court from which this appeal has been taken is affirmed.
 
 
 3
 It is FURTHER ORDERED, sua sponte, that the Clerk shall withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15(b)(2).
 
 
 4
 Separate statement concurring in the judgment filed by Circuit Judge EDWARDS.
 
 
 5
 Separate statement concurring in the judgment filed by Circuit Judge SENTELLE, in which Circuit Judge HENDERSON joins.
 
 
 6
 HARRY T. EDWARDS, Circuit Judge, concurring in the judgment:
 
 
 7
 I agree that the Tax Court could properly conclude on this record that Mr. Kaplan did not satisfactorily demonstrate that he has the "good moral character and repute" necessary for admission to practice before the court. Tax Ct.R. 200(a). I write separately, however, to clarify what I believe to be the applicable standards under the Tax Court's rules so that if Mr. Kaplan reapplies, further proceedings in this matter may be resolved fairly and with less contention.
 
 
 8
 To begin with, Mr. Kaplan's assertion that the Tax Court denied him admission solely because of his prior felony conviction does not hold up under scrutiny. Rule 200(a) of the Tax Court's Rules places the burden upon the applicant to prove his good moral character. The rules further provide that a conviction for a criminal violation of the Internal Revenue Code is substantial evidence of the applicant's lack of moral fitness. See Tax Ct.R. 202(a). Thus, under the rules, such a conviction gives rise to an adverse presumption that the petitioner must overcome if he is to be admitted, but the Tax Court does not consider a prior felony conviction a per se barrier to admission.
 
 
 9
 In this case, the Tax Court concluded that Mr. Kaplan did not rebut the presumption resulting from his prior conviction. In response to the Tax Court's show cause order, Mr. Kaplan submitted proof of his membership in the Michigan and Ohio bars, together with a declaration in which he outlined his community service activities. However, he failed to submit third-party affidavits attesting to his moral character or provide other documentary evidence substantiating the claims in his declaration. Furthermore, when offered an opportunity to appear before the Tax Court Committee on Admissions at a show cause hearing, Mr. Kaplan chose to have his application submitted on the limited written record. Under these circumstances, I agree that the denial of Mr. Kaplan's application was not an abuse of discretion.
 
 
 10
 I am somewhat troubled, however, by the manner in which the disapproval decision was made; and I can at least understand Mr. Kaplan's evident frustration with the review process. On several occasions, Mr. Kaplan requested guidance from the Tax Court regarding the type of information necessary to adequately complete his application and comply with the show cause order. Throughout the process, though, Mr. Kaplan received no useful information regarding the nature or quality of the evidence that would satisfy his burden. Instead, in response to each inquiry, the Tax Court reiterated its desire to know more about the facts and circumstances of Mr. Kaplan's prior conviction. See, e.g., Order to Show Cause (June 11, 1991) (describing Mr. Kaplan's explanation of his conviction as "unclear and inadequate"). Likewise, when the Tax Court finally disapproved Mr. Kaplan's application, the Chairman of the Committee on Admissions provided only the most cursory justification, writing: "[t]he Committee has considered your application for admission together with the explanation which you have offered concerning your prior criminal conviction. The Committee has voted to disapprove your application for admission." Letter from Judge Jules G. Korner to Leonard S. Kaplan (Aug. 27, 1991). Thus, Mr. Kaplan was never apprised of the inadequacies in his application or the precise reasons for its disapproval.
 
 
 11
 Frankly, I am perplexed by the handling of this case. If Mr. Kaplan's application lacked material information, it would seem to be in the best interests of all concerned for the Tax Court to identify the deficiencies. This would allow the applicant to submit a complete application and it would allow the Tax Court to make a decision on the merits based on the best available information. I am not sure what is gained in failing to respond to an applicant's inquiry regarding the precise information needed to support an application. Under the Tax Court's rules, a prior criminal conviction is not a per se barrier to admission, so one wonders why the Tax Court appeared to focus on this issue alone in responding to Mr. Kaplan. And, in a case of this sort, in which the applicant has been readmitted to practice before a federal district court and a federal court of appeals (both of which handle tax cases), it is not as if there is no decent evidence to support the applicant's request for admission to the Tax Court. In other words, there are things other than Mr. Kaplan's prior conviction that are concededly relevant to his application. Yet, to date, no one has been prepared to explain to Mr. Kaplan the nature and weight of the evidence that he must produce.
 
 
 12
 In any event, I do not view the Tax Court's failure to give Mr. Kaplan better guidance as a fatal flaw. As a litigator, Mr. Kaplan had every reason to know that he should have at least submitted third-party affidavits attesting to his character and fitness to practice law. He has been readmitted to both state and federal courts, so there are persons who can attest to his current work as a member of the bar; he claims to be a member of an ethics committee of a local bar association, so there should be persons who know of his current ethical standards; and, apparently, he has undergone personal "rehabilitation," so there are persons who should be able to confirm whether and how time has cured the problems previously encountered by Mr. Kaplan. Indeed, counsel for the Tax Court suggested that this is the type of information that was lacking in this case. Further, Mr. Kaplan decided to forego an opportunity to present his case for admission at the show cause hearing. Although he now claims that such an appearance was prohibitively expensive, Mr. Kaplan did not raise that concern with the Tax Court or request a substitute fact-finding procedure. In sum, Mr. Kaplan failed to assemble a complete response to the Tax Court's show cause order, and the Tax Court's reticence cannot excuse that failure. Therefore, I join the order affirming the Tax Court's present disapproval of his application.
 
 
 13
 A final thought: should Mr. Kaplan decide to pursue this matter, he would be well-advised to retain counsel rather than proceed with a second pro se application. See Edmond v. United States Postal Serv. General Counsel, 949 F.2d 415, 427 (D.C.Cir.1991). This suggestion is not intended to reflect upon Mr. Kaplan's abilities as a lawyer or on the merits of his case. Rather, at least from the vantage point of this judge, it seems clear that a retained attorney may understand better than Mr. Kaplan that, even if his client is a "new man," the case still must be made to convince those who know only of his tainted past. It was clear from the argument before this court that Mr. Kaplan is not dispassionate in his approach to this case, and this may have caused him to miss things that would have been obvious to other members of the bar. An advocate who is not personally involved may greatly facilitate the reasoned and dispassionate presentation of materials necessary to advance Mr. Kaplan's cause.
 
 
 14
 SENTELLE, Circuit Judge, joined by HENDERSON, Circuit Judge:
 
 
 15
 I fully concur in the judgment disposing of this case and write separately only to respond to the comments of my colleague Judge Edwards.
 
 
 16
 I agree with Judge Edwards that "as a litigator, Mr. Kaplan had every reason to know" that he had the burden of proof and should have submitted third-party affidavits or other evidence of character. That being said, I do not understand why we should find troubling or perplexing anything about the Tax Court's Admission Committee's handling of this case. I certainly do not think that Mr. Kaplan's ex parte contacts with the Tax Court regarding "the type of information necessary" entitle him to any guidance in preparing or presenting his case. Further, I do not understand it to be the position of the Tax Court, or its Committee, that "Mr. Kaplan's application lacked material information," as suggested by my colleague. Rather, I understand it to be the position of the court that his completed application and accompanying data simply did not convince it that he had met his burden of proof. Those of us who have tried cases for a living, and those who do it now, know that every day in every case the lawyer representing the side having the burden of proof must marshal and present sufficient evidence to meet that burden without any "guidance from the court." Not only do I find the Tax Court's handling of this matter to be without reversible error, I find it to be without blemish.
 
 
 17
 Indeed, I think that had the Court allowed Mr. Kaplan to goad it into providing him with "guidance," he would have prejudiced the hearing in advance. It would be difficult to see how a panel of the court could have made a fair and impartial hearing on an application when the presiding judge of that panel had advised the applicant on the kind and quality of evidence that he should present.
 
 
 18
 Further, Judge Edwards states that "under the Tax Court's rules, a prior criminal conviction is not a per se barrier to admission." The Tax Court's rules are silent on this matter. Judge Edwards then notes that Kaplan's admission to both a federal district court bar and a federal appellate court bar is persuasive evidence of Kaplan's fitness because both courts, like the Tax Court, hear tax cases. In my view, this court's judgment, including our evaluation of Kaplan's evidence of admission to other bars, should not be read to indicate that the Tax Court cannot establish a per se rule disqualifying an applicant with a prior criminal conviction, especially one relating to tax laws. Each federal court, subject to due process constraints, is entitled to adopt its own rules governing admission to its bar. In re Buffalo, 390 U.S. 544, 547 (1968). Due process requires only that "any qualification [for admission] must have a rational connection with the appellant's fitness or capacity to practice law." Schware v. Board of Bar Examiners, 353 U.S. 232, 239 (1956). So long as the Tax Court comports with due process, it is free to adopt whatever rule it chooses.