**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 15–8022

IN RE MANUEL R. SUÁREZ-JIMÉNEZ,

Respondent.

ON ORDER TO SHOW CAUSE WHY RECIPROCAL
DISCIPLINE SHOULD NOT BE IMPOSED

Before

Torruella, Thompson, and Kayatta,
<u>Circuit Judges</u>.

<u>Manuel R. Suárez-Jiménez</u> pro se.

December 20, 2016

**Per Curiam.** The Supreme Court of Puerto Rico indefinitely suspended respondent Manuel R. Suárez-Jiménez ("Suárez") from the practice of law, prompting this court to issue an order to show cause why it should not impose reciprocal discipline. Having carefully considered the arguments Suárez advanced in his brief and during his hearing before our disciplinary panel, we now order that Suárez be indefinitely suspended from practice before this court.

On December 17, 2014, the Supreme Court of Puerto Rico ordered the indefinite suspension of Suárez based on his violations of the Puerto Rico Professional Ethics Code. In re Suárez Jiménez, 2014 TSPR 143 (P.R. 2014) (per curiam). Those violations occurred in the course of Suárez's representation of the plaintiffs in a lawsuit filed in the United States District Court for the District of Puerto Rico, captioned Rivera-Carmona v. American Airlines, No. 09-CV-1062 (D.P.R. 2009). After the plaintiffs initiated that lawsuit, the defendant achieved a transfer of venue to the United States District Court for the Southern District of Florida, Miami Division. The transfer created an immediate problem for Suárez--he was not licensed in Florida, and not otherwise permitted to appear by himself in that United States District Court. Rather than doing what any reasonable lawyer would do in such a situation (notify the court that some time was needed for his clients to secure local Florida counsel), Suárez informed the court and his clients that

he intended to file a motion for remand, which he likely could not do on his own. Worse yet, he then did nothing to preserve his clients' lawsuit, which the district court in Florida eventually dismissed without prejudice in April of 2010.

Nine months later, one of the plaintiffs swore a grievance before the Supreme Court of Puerto Rico. According to the grievance, Suárez told the plaintiffs he would "do everything possible to remand the case again to Puerto Rico since he was not knowledgeable of Miami laws," but then informed the plaintiffs that "the case was dismissed because he was unable to appear in the state of Florida." The grievance stated that the plaintiffs did not know the status of their case--including whether Suárez appealed the dismissal as promised--due to "poor communication" by Suárez. It requested a copy of the case file and concluded, "We want to know if he is following up on the case because he does not answer calls nor emails."

The grievance prompted an investigation by the Office of the Solicitor General of Puerto Rico, which found that the evidence collected in its investigation substantiated the grievance. That office issued a report to the Supreme Court of Puerto Rico on March 9, 2012, stating that Suárez may have violated four ethical canons: the duty to render competent service and diligent representation (Canon 18); the duties upon withdrawal from representation (Canon 20); the duty of candor toward clients and

colleagues (Canon 35); and the duty to uphold the dignity and honor of the legal profession (Canon 38). The Supreme Court of Puerto Rico, after evaluating the report, ordered the Solicitor General to present a complaint with formal charges for those violations. That court then appointed a Special Commissioner to review the materials and make a recommendation on the charges.

In 2014, the Special Commissioner issued a report concluding that clear and convincing evidence supported all four charges in the complaint. The report recommended indefinite suspension. After conducting a searching review of the report and recommendation, the Supreme Court of Puerto Rico found violations of the four canons outlined above. With respect to Canons 18 and 20, the court found that Suárez's inaction post-transfer--and resulting violations of local rules and court orders--caused dismissal of the plaintiffs' lawsuit. It rejected his arguments that the retainer agreement limiting his services to litigation in the District of Puerto Rico, or his inability to receive electronic notices in the Southern District of Florida, excused his inaction--particularly because he never informed the court or his opposing counsel that he was unable to practice in the latter forum and conducted himself in a manner suggesting he was able to practice there. The court also rejected his argument that, because the dismissal was without prejudice, he did not violate his ethical duties. With respect to Canon 35, the court found that Suárez's

- 4 -

inconsistent statements and actions confused his clients, opposing counsel, and the court regarding his ability to practice in the Southern District of Florida and his efforts to transfer the case back to the District of Puerto Rico. And finally, with respect to Canon 38, the court found that the totality of Suárez's conduct did not "exalt the honor nor the dignity of the profession" due to "serious deviations from the ethical rules." The court imposed an immediate and indefinite suspension, and denied two subsequent motions by Suárez for reconsideration.

Upon receiving the Supreme Court's order, this court initiated disciplinary proceedings through an order to show cause. The United States District Court for the District of Puerto Rico did the same and imposed reciprocal discipline by order dated October 8, 2015. It agreed with the findings of the Supreme Court and further held that Suárez violated the rules of professional conduct applicable to attorneys admitted to practice in the district court. An appeal of that order is not presently before this panel. Instead, our inquiry is limited to the appropriateness of imposing reciprocal discipline in this court.

"Our standards for imposing reciprocal discipline are clear and are set forth in In re Williams, 398 F.3d 116 (1st Cir. 2005) (per curiam)." In re Oliveras López De Victoria, 561 F.3d 1, 3 (1st Cir. 2009). We impose substantially similar discipline to that imposed in the state court unless the respondent persuades

us

> 1. that the procedure used by the other court was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
>
> 2. that there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this Court could not, consistent with its duty, accept as final the conclusion on that subject; or
>
> 3. that the imposition of substantially similar discipline by this Court would result in grave injustice; or
>
> 4. that the misconduct established is deemed by the Court to warrant different discipline.

In re Williams, 398 F.3d at 116 (quoting 1st Cir. R. Att'y Discip. Enf. (Discip. R.) II.C)); see also Fed. R. App. P. 46(b)(1)(A). The respondent bears the burden to demonstrate "by clear and convincing evidence . . . that the imposition of substantially similar discipline is unwarranted." In re Barach, 540 F.3d 82, 85 (1st Cir. 2008). "Given the limited nature of our inquiry, the norm will be for this court to impose discipline which is substantially similar to that imposed by the state court." In re Williams, 398 F.3d at 119 (citing In re Hoare, 155 F.3d 937, 940 (8th Cir. 1998)).

In his lengthy response to the show cause order, Suárez appears to argue that all four grounds for declining to impose reciprocal discipline apply here. We address each in turn. In doing so, we "treat the state court's factual findings with a high degree of respect," In re Barach, 540 F.3d at 84 (citing In re Williams, 398 F.3d at 118), even as we "fully consider the state

- 6 -

record" in determining whether reciprocal discipline is warranted, id. (citing Selling v. Radford, 243 U.S. 46, 51 (1917)).

First, we see no defect so severe as to constitute a deprivation of due process in the notice and opportunity to be heard that Suárez received before the Supreme Court of Puerto Rico. See In re Williams, 398 F.3d at 119–20; Discip. R. II.C(1). Many of Suárez's due process arguments exceed the scope of protections afforded to the respondent in an attorney disciplinary proceeding. See In re Cordova-Gonzalez, 996 F.2d 1334, 1336 (1st Cir. 1993) (noting that the due process rights of the respondent "do not extend so far as to guarantee the full panoply of rights afforded to an accused in a criminal case" (quoting Razatos v. Colo. Supreme Court, 746 F.2d 1429, 1435 (10th Cir. 1984))). Furthermore, his argument that he received insufficient notice of the charges against him relies upon an overly narrow reading of the grievance, and an unduly broad application of In re Ruffalo, where the United States Supreme Court found a violation of the respondent's due process rights because the respondent did not receive notice of a new charge, nowhere referenced in the formal complaint, until after the investigation into that complaint concluded. See 390 U.S. 544, 549–52 (1968). Unlike Ruffalo, Suárez received a grievance that alerted him to the misconduct at issue, and a formal complaint that charged each of the four violations later found by the Supreme Court of Puerto Rico.

- 7 -

Second, there is no infirmity of proof that instills in us a clear conviction that we cannot accept the Supreme Court of Puerto Rico's conclusion as final. See In re Williams, 398 F.3d at 119; Discip. R. II.C(2). Suárez's contention that there was "no evidence whatsoever to support any of the four charges" (emphasis omitted) is specious. He attempts to discredit the grieving party based upon alleged inconsistencies among his grievance, another plaintiff's statements suggesting limited awareness about the status of the case, and cellular phone records indicating minimal contact between the grieving party and Suárez. His attempts fall short, however, because even the evidence he marshals evinces confusion among the plaintiffs about the status of the case--confusion that the Supreme Court of Puerto Rico found Suárez sowed through infrequent communications and inconsistent messages. Additionally, evidence of four brief phone calls between the grieving party and Suárez, none lasting more than five minutes, and altogether totaling only sixteen minutes, hardly defeats the grievance's assertion of poor communication--particularly where the phone calls came approximately eight months after dismissal of the plaintiffs' action.

Suárez also disputes that he knowingly or recklessly deceived his clients because promises he made to them were sincere when made, becoming untruthful only after legal research suggested there were no grounds to do what he promised. Our task is not to

consider these defenses de novo. Rather, we ask only whether the excuses and justifications that Suárez provides produce a clear conviction that we could not accept as final the Supreme Court of Puerto Rico's conclusions. In context, it is not unreasonable to think that, if Suárez's plans were tentative, he could and should have signaled that. And if he discovered that legal rules or ethical obligations prevented him from doing what he committed, he promptly should have told those involved.

Third, we reject out of hand Suárez's claim that the imposition of reciprocal discipline would occasion grave injustice. See In re Williams, 398 F.3d at 119; Discip. R. II.C(3). This claim was not developed by Suárez and, in any event, lacks merit.

Finally, we do not agree that Suárez's misconduct merits different discipline in this court. The suspension is indefinite, not permanent, and we see nothing preventing Suárez from returning to the Supreme Court of Puerto Rico to seek a lifting of the suspension.

We therefore impose upon Suárez an indefinite suspension from the bar of this court. If and when the Supreme Court of Puerto Rico reinstates Suárez to the practice of law or otherwise modifies his indefinite suspension, Suárez may seek reinstatement in this court.

So ordered.