# Supreme Court of Louisiana

The Opinions handed down on the **19th day of October, 2016**, are as follows:

**PER CURIAM:**

**2016-B -0967**     **IN RE: ARTHUR GILMORE, JR.**

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Arthur Gilmore, Jr., Louisiana Bar Roll number 1059, be and he hereby is disbarred, retroactive to June 9, 2013, the date of his most recent interim suspension. Respondent shall also be given credit for the time he served on interim suspension during the period of June 19, 2011 to September 21, 2011 and during the period of May 2, 2012 to April 3, 2013. Respondent's name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

HUGHES, J., dissents and would impose a lesser sanction.

SUPREME COURT OF LOUISIANA

NO. 2016-B-0967

IN RE: ARTHUR GILMORE, JR.

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Arthur Gilmore, Jr., an attorney licensed to practice law in Louisiana but currently on interim suspension based upon his conviction of a serious crime. *In re: Gilmore*, 13-1284 (La. 6/19/13), 117 So. 3d 500.

**UNDERLYING FACTS**

In 2010, a federal grand jury in the Western District of Louisiana returned an indictment against respondent, a member of the Monroe City Council. The indictment charged respondent with engaging in a racketeering enterprise whereby he used his office and position as an elected city councilman to extract bribes in the form of cash and other things of value from individuals and organizations having business before the council, in exchange for which respondent took actions favorable to these individuals and organizations.

The matter first proceeded to trial in April 2011. On May 10, 2011, a jury found respondent guilty of violating the RICO Act, 18 U.S.C. § 1962(c), and the Hobbs Act, 18 U.S.C. § 1951, which prohibits actual or attempted extortion affecting interstate or foreign commerce. Following respondent's conviction, we

placed him on interim suspension in *In re: Gilmore*, 11-1401 (La. 7/19/11), 65 So. 3d 1289.

Thereafter, the federal district court granted respondent's motion for new trial in the criminal case and vacated his conviction. In light of this order, the ODC filed a motion to dissolve respondent's interim suspension. We granted the motion and dissolved respondent's interim suspension on September 21, 2011. *In re: Gilmore*, 11-1401 (La. 9/21/11), 72 So. 3d 342.

In October 2011, the government filed a motion for reconsideration of the ruling on the motion for new trial. Following a hearing, the federal district court granted the motion for reconsideration and reinstated respondent's May 2011 convictions of racketeering and extortion. On May 2, 2012, we again placed respondent on interim suspension based upon his conviction of a serious crime. *In re: Gilmore*, 12-0852 (La. 5/2/12), 88 So. 3d 441.

In March 2013, the federal district court granted a second motion for new trial in respondent's criminal case, prompting him to seek the dissolution of his interim suspension. We granted respondent's motion and dissolved his interim suspension on April 3, 2013. *In re: Gilmore*, 12-0852 (La. 4/3/13), 110 So. 3d 130.

On May 13, 2013, respondent was retried before a jury in federal district court. During the trial, a local real estate developer testified that in 2007 he had regularly given respondent cash contributions and in-kind donations in exchange for favorable assistance with certain zoning variances he sought. In late 2007 or early 2008, the developer became an FBI informant. In 2008, the developer recorded a conversation with respondent. After respondent brought up the developer's pending zoning application and other business before the city, the conversation turned to respondent's recently concluded re-election campaign. Respondent then said that he was "still taking campaign contributions," and the

2

developer gave him $1,000, saying, "and all I ask for is a fair shake and you do something for me." Respondent replied, "No problem."[1]

Approximately eighteen months later, in 2009, the developer recorded a second conversation with respondent. Respondent began the conversation by updating the developer on a proposal pending in the city council to ratify an amendment to a contract between one of the developer's companies and the city. Respondent then requested $207 from the developer on behalf of a constituent whose utilities were about to be disconnected. The same evening, the city council approved the contract amendment, and the developer gave the $207 to respondent a couple of days later.

On May 16, 2013, respondent was found guilty of racketeering but not guilty of extortion. Following respondent's conviction, we placed him on interim suspension for a third time. *In re: Gilmore*, 13-1284 (La. 6/19/13), 117 So. 3d 500.

On September 26, 2013, respondent was sentenced to serve twenty-four months in federal prison. This sentence was below the sentencing guidelines range, and the judge gave the following reasons for the downward departure:

> In this case, the Government's main witness engaged in an ongoing program of planned enticement to provoke [respondent] into agreeing to bribes in exchange for perceived favors from [respondent's] position with the Monroe City Council. Because of that, the Guidelines, in my opinion, may overstate the relative seriousness of [respondent's] actions and the application of an equitable sentence.
>
> So I find there exists a mitigating circumstance of a kind not adequately taken into consideration by the Guidelines and that in order to advance the objective set forth under the Guidelines, the sentence will be different from that described.

---

[1] The $1,000 payment was not reported as a campaign contribution on respondent's campaign finance reports.

On November 13, 2014, the United States Court of Appeals for the Fifth Circuit affirmed respondent's racketeering conviction.[2] *United States v. Gilmore*, No. 13-31064 (5th Cir. 2014) (not designated for publication).

## DISCIPLINARY PROCEEDINGS

In July 2015, the ODC filed one count of formal charges against respondent, alleging that he violated Supreme Court Rule XIX, § 19 (lawyers convicted of a crime). Respondent, through counsel, answered the formal charges, essentially admitting to his misconduct and asking for a sanction "other than disbarment." In mitigation, respondent offered that his conviction was based on only two violations, those being a $1,000 campaign contribution and a $207 payment for a constituent's electric bill. The matter then proceeded to a formal hearing before the hearing committee.

### *Formal Hearing*

The hearing committee conducted the formal hearing in December 2015. Both respondent and the ODC introduced documentary evidence for the committee's consideration. Respondent called several character witnesses to testify before the committee. He also testified on his own behalf and on cross-examination by the ODC.

---

[2] In its unpublished opinion, the Court of Appeals framed the issue before it as follows:

> In May 2013, a jury found Arthur Gilmore, Jr., a former Monroe, Louisiana city councilman, guilty of violating the Racketeering Influence and Corrupt Organizations Act ("RICO"). In this direct appeal, we are asked two questions: (1) was Gilmore entitled to a jury instruction on entrapment, and (2) was there sufficient evidence to support his conviction under RICO?
>
> We answer "no" to the first, "yes" to the second, and AFFIRM Gilmore's conviction.

4

Following the hearing, the hearing committee determined that respondent committed a "serious crime" under Supreme Court Rule XIX, § 19. The committee further determined that respondent violated the following provisions of the Rules of Professional Conduct: Rules 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(e) (stating or implying an ability to influence improperly a judge, judicial officer, government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law). In making these determinations, the committee considered both the evidence and testimony presented at the hearing, summarizing the testimony as follows:

Judge Robert Johnson of the Fourth Judicial District Court for the Parish of Ouachita testified that respondent is smart, compassionate, and wants to help people. He also described respondent as a good and decent man, a man of integrity, and a generous man who cared for his constituents and the people of his community. He indicated respondent was a family man who kept his promises, and he did not believe respondent should be disbarred. Valerie Rowley, respondent's long-time neighbor, testified that respondent is caring, honest, generous, and trustworthy. She also indicated he is a deacon in his church and is particularly helpful to the elderly. Ellen Hill, a committee member of the Monroe Planning and Zoning Commission and an employee of Louisiana Delta Community College, described respondent as professional, concerned, and committed. Reverend Sam Moore described respondent as principled, honest, compassionate, generous, and trustworthy. Jamie Mayo, the Mayor of Monroe, testified that he served on the Monroe City Council with respondent. Mr. Mayo

indicated respondent was concerned and cared about his constituents, is a man of the highest integrity, and has a strong work ethic. He further described respondent as dependable, helpful, generous, trustworthy, and religious. David Creed, who is the Executive Director of North Delta Planning and Development, testified that respondent was a member of North Delta's board and a Vice President. He indicated respondent upheld his duties, and he rated respondent highly for honesty. Reverend James Earl Jackson testified that he has known respondent since 1966. He indicated respondent was a deacon at his church, had a love of God, and was a generous giver to the church. He also described respondent as having a strong work ethic and concern for the community as well as being honest, trustworthy, and non-materialistic. Ibra January, the Executive Director of the Ouachita Multi-Purposes Community Action Program, indicated respondent served on the program's board with him. He testified that respondent tries to help people in need in Ouachita Parish and has a passion for the poor. He also described respondent as trustworthy, honest, and committed to his church.[3]

Respondent testified that he was elected to the Monroe City Council in 1996 and re-elected three consecutive times thereafter, the last time being in 2008. He also indicated that he worked as an assistant district attorney in the child support section from 1995 to 2010. He stated he returned to Monroe after law school because he wanted to get into politics there in order to help the elderly and the poor of his hometown. Respondent also testified that he is a Christian, a generous giver, a church deacon, chairman of the board of deacons, and superintendent of education in his church's Sunday school. He further indicated his belief in giving of his money, time, and talent to the church. He has also advised African-American men through an African-American fraternity, working with them in

---

[3] The ODC and respondent stipulated that four other character witnesses would testify similarly to the witnesses who appeared before the committee.

6

doing manual labor in various Monroe communities. He testified that honesty is important to him and that he has used his personal money to help his constituents. Regarding his conviction, he stated he feels remorse for putting his family "through this" and for having used "bad judgment." Despite his conviction, he believes he has a good reputation in his community.

Based on the evidence presented, and noting respondent admitted to his conviction, the committee determined the ODC proved by clear and convincing evidence that respondent was convicted of a serious crime. The committee further determined respondent knowingly and intentionally accepted money to use his official position on the Monroe City Council to influence the outcome and to affect certain zoning issues before the Council. Respondent violated duties owed to the public, the legal system, and the legal profession, causing harm to the public trust and the legal profession. Citing the ABA's *Standards for Imposing Lawyer Sanctions*, the committee determined the baseline sanction is disbarment.

In aggravation, the committee found a prior disciplinary record (a 1992 admonition for failing to promptly remove his suspended law partner's name from the law office's newspaper advertisement), a dishonest or selfish motive, and substantial experience in the practice of law (admitted 1983). In mitigation, the committee found full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character or reputation, imposition of other penalties or sanctions, and remoteness of the prior disciplinary offense.

Although the committee considered respondent's misconduct in light of the permanent disbarment guidelines, it ultimately decided permanent disbarment was not warranted. In rejecting permanent disbarment as the appropriate sanction, the committee was compelled by respondent's character witnesses, who all believed that he had been punished enough and that permanent disbarment should be reserved for a more egregious offense than respondent's. The committee also cited

7

the mitigating factors present as well as the judge's reasons for imposing a more lenient sentence upon respondent than the sentencing guidelines presented.

Based on this reasoning, the committee recommended respondent be disbarred, but not permanently. The committee further recommended respondent be given credit for the time he has served on interim suspension.

The ODC filed an objection to the committee's report and recommendation, arguing that permanent disbarment should be imposed.

*Disciplinary Board Recommendation*

After review, the disciplinary board determined the hearing committee correctly applied the Rules of Professional Conduct by finding respondent in violation of Rules 8.4(b), 8.4(c), 8.4(d), and 8.4(e). Although the ODC did not charge respondent with any of these rule violations, the substance of the formal charges gave him adequate notice of his misconduct, namely his criminal conviction, and the facts underlying his conviction clearly implicate these rules.

The board then determined respondent intentionally violated duties owed to the public by engaging in a criminal act while acting in his capacity as an elected official. His misconduct harmed the public, especially his constituents, by depriving them of a fair governmental process and harmed the public's perception of the legal profession. The board agreed with the committee that the baseline sanction is disbarment.

The board adopted the aggravating and mitigating factors found by the committee. Additionally, the board recognized respondent's illegal conduct as an aggravating factor and respondent's remorse as a mitigating factor.

Considering respondent's misconduct in light of the permanent disbarment guidelines and the prior jurisprudence of this court, the board recommended he be permanently disbarred.

Respondent filed an objection to the board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

**DISCUSSION**

Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). When the disciplinary proceedings involve an attorney who has been convicted of a crime, the conviction is conclusive evidence of guilt and the sole issue presented is whether respondent's crimes warrant discipline, and if so, the extent thereof. Supreme Court Rule XIX, § 19(E); *In re: Boudreau*, 02-0007 (La. 4/12/02), 815 So. 2d 76; *Louisiana State Bar Ass'n v. Wilkinson*, 562 So. 2d 902 (La. 1990). The discipline to be imposed in a given case depends upon the seriousness of the offense, the circumstances of the offense, and the extent of the aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Perez*, 550 So. 2d 188 (La. 1989).

Here, respondent stands convicted of racketeering by accepting bribes in exchange for taking favorable actions on behalf of individuals and organizations having business before the Monroe City Council, of which respondent was an elected member. This crime is a felony under federal law and clearly warrants serious discipline. The record supports the rule violations found by the hearing committee and the disciplinary board.[4]

Respondent knowingly and intentionally violated duties owed to the public and to the legal system by engaging in a criminal act while acting in his capacity as an elected official, causing actual harm. The baseline sanction for this type of misconduct is disbarment.

---

[4] We agree with the board that although the ODC did not charge respondent with specific violations of Rule 8.4, the substance of the formal charges gave him adequate notice of his misconduct, namely his criminal conviction. *See In re Ruffalo*, 390 U.S. 544 (1968).

Aggravating factors present include a prior disciplinary record, a dishonest or selfish motive, substantial experience in the practice of law, and illegal conduct. The mitigating factors present are full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character or reputation, imposition of other penalties or sanctions, remorse, and remoteness of the prior disciplinary offense.

In concluding that permanent disbarment is not an appropriate sanction in this matter, the hearing committee gave great weight to the testimony of the character witnesses, the applicable mitigating factors, and the reasons given by the federal district judge for imposing a more lenient sentence upon respondent than called for by the sentencing guidelines. We agree that all of these factors are compelling, and accordingly, we find that it is not necessary to impose permanent disbarment in this case.

Accordingly, we will reject the disciplinary board's recommendation and disbar respondent, retroactive to June 9, 2013, the date of his most recent interim suspension. We further order that respondent be given credit for the time he served on interim suspension during the period of June 19, 2011 to September 21, 2011 and during the period of May 2, 2012 to April 3, 2013.

**DECREE**

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Arthur Gilmore, Jr., Louisiana Bar Roll number 1059, be and he hereby is disbarred, retroactive to June 9, 2013, the date of his most recent interim suspension. Respondent shall also be given credit for the time he served on interim suspension during the period of June 19, 2011 to September 21, 2011 and during the period of May 2, 2012 to April 3, 2013. Respondent's name shall be stricken

10

from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

**SUPREME COURT OF LOUISIANA**

**No. 2016-B-0967**

**IN RE: ARTHUR GILMORE, JR.**

**ATTORNEY DISCIPLINARY PROCEEDING**

**Hughes, J., dissents.**

I respectfully dissent and would impose a lesser sanction.

1