NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 13, 2012
Decided August 14, 2012

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 12-1431 | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| IN RE: JUSSI KUSTAA KIVISTO, Attorney-Respondent-Appellant. | |
| | No. 12 C 1303 |
| | James F. Holderman, *Chief Judge.* |

**O R D E R**

The Supreme Court of Florida disbarred Jussi Kivisto after investigating a complaint that Kivisto had charged excessive fees. The Supreme Court of Illinois imposed reciprocal discipline, disbarring Kivisto in September 2011. Based on the disbarment in Illinois, the Executive Committee of the United States District Court for the Northern District of Illinois ordered Kivisto to show cause why he should not be disbarred from the practice of law in the Northern District. The Executive Committee was not persuaded by Kivisto's response and disbarred him. Kivisto appeals, arguing that the Executive Committee failed to consider whether he received a full and fair hearing in the Illinois proceeding, and by implication, in the Florida proceeding as well. We affirm the Executive Committee's decision.

## I.  Background

Kivisto represented the estate of Mirjam Aho, who died in Florida in June 2001 and left $150,000 to her elderly aunt Milja Johnson. Johnson, who lacked legal capacity, had been placed in a long-term care facility in New York by her legal guardian, the Jewish Association for Services for the Aged ("JASA"). There followed a 2½-year legal struggle in which Kivisto refused to distribute the Aho estate proceeds to JASA, which he insisted could not legally serve as Johnson's guardian. After trying unsuccessfully to intervene in Johnson's guardianship proceedings in a New York court, Kivisto agreed to distribute the Aho estate to JASA. He submitted an accounting showing $30,000 in earned fees for his work on the Aho estate but agreed to accept $10,000 when JASA protested. Johnson died intestate in January 2004, however, before Kivisto distributed her inheritance.

Kivisto then petitioned a Florida court to administer Johnson's estate in Florida, claiming to represent Johnson's Finnish heirs. The undistributed Aho estate constituted Johnson's sole asset for purposes of probating her estate in Florida. Kivisto was appointed personal representative of the Johnson estate on April 6, 2004. Two weeks later, JASA moved to compel distribution of the Aho estate. Kivisto opposed this motion, arguing that JASA lacked standing to compel distribution and was no longer entitled to the Aho assets. Kivisto then agreed to pay JASA's legal expenses in exchange for dismissal of the motion to compel.

After deducting his fees and the fee of the estate's personal representative, Kivisto distributed the Aho estate's remaining $130,500 to the Johnson estate in July 2004. From this amount the Johnson estate (through Kivisto, its personal representative) paid $10,000 to JASA's New York counsel, Miller Canfield, and about $14,000 to its Florida counsel, Hodgson Russ. Kivisto distributed $52,500 to Johnson's Finnish heirs, which is all that remained after he paid himself $48,000 in legal fees, a $3,900 fee as personal representative, and $1,500 for costs. JASA got nothing.

Meanwhile, Susan Robbins, a lawyer at Miller Canfield, filed a complaint with the Florida bar alleging that Kivisto had demanded excessively high fees for his work on the Aho estate, that his work for the Johnson estate had conflicted with his work for the Aho estate, and that he had committed Medicaid fraud by not turning over the residual of the Johnson estate to JASA as agent for New York Medicaid, which had paid for Johnson's care and thus was a creditor of her estate. Kivisto responded in a letter to the Florida bar in which he noted that he never collected his $30,000 fee from the Aho estate and instead had accepted only $10,500 by agreement with JASA. He further asserted that New York Medicaid had never filed a formal claim against the Johnson estate.

The Florida bar did not pursue the claim of Medicaid fraud, but in December 2007 filed a 3-count disciplinary complaint alleging that Kivisto had (1) charged excessive fees to the Aho and Johnson estates; (2) engaged in activities that were fraudulent, illegal, or contrary to the principles of honesty and justice; and (3) engaged in conduct prejudicial to the administration of justice. Kivisto in turn went to federal court in Florida and filed a 14-count complaint against Miller Canfield, JASA's counsel in Florida, and two attorneys for the Florida bar claiming RICO and civil-rights violations.[1] He then moved to disqualify one of the Florida bar's lawyers from his disciplinary proceedings on the basis of the pending complaint. The referee conducting the proceedings denied this motion, stating that he deemed Kivisto's federal lawsuit frivolous. Kivisto then moved to disqualify the referee, asserting that his handling of the motion was tainted by bias. The referee denied this motion, but did not rule on an amended version, which Kivisto claims to have delivered later the same day. Kivisto then stopped participating in the Florida proceedings, and in October 2008 the referee issued an order of default.

Kivisto then filed a motion demanding that the Florida default be set aside, the matter be reassigned to another referee, and the judgment be stayed pending the disposition of this motion. He argued that his amended motion to disqualify the referee was deemed granted by operation of law because the referee did not rule on it within 30 days. The referee, who maintained that he had never received Kivisto's amended motion to disqualify, issued a final report on December 17, 2008, recommending that Kivisto be disbarred. Although noting that Kivisto was found guilty by operation of law as a result of default, the referee's report also provided that "even if a default had not been entered, the evidence on record now shows clearly and convincingly that [Kivisto] did commit the violations with which he stands accused."

Kivisto then petitioned the Supreme Court of Florida for review of the referee's report. But he was late in filing his brief on the merits even though the court had warned him that his petition for review could be dismissed if his brief was not timely filed. Accordingly, the court struck Kivisto's untimely brief, dismissed his petition for review and treated the referee's report as uncontested, and disbarred Kivisto. Citing his many meritless and duplicative filings, the state supreme court then directed its clerk to reject any future submission from Kivisto relating to his dispute with the Florida bar or his potential readmission to the bar.

---

[1] Kivisto's suit was dismissed for failure to state a claim, *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, No. 08-61519-CIV, 2010 WL 2196472 (S.D. Fla. June 1, 2010), a decision that the Eleventh Circuit affirmed on appeal, *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136 (11th Cir. 2011). Kivisto filed a second suit based on similar facts after he was disbarred, which the Eleventh Circuit deemed barred by res judicata. *Kivisto v. Soifer*, 448 F. App'x 923 (11th Cir. 2011).

The administrator of Illinois's Attorney Registration and Disciplinary Commission then petitioned to impose reciprocal discipline in the State of Illinois under Supreme Court Rule 763, which, subject to limited exceptions, provides for reciprocal discipline of attorneys disciplined in other states. The Supreme Court of Illinois denied Kivisto's request for a hearing and disbarred him in September 2011. The Executive Committee for the Northern District of Illinois then ordered Kivisto to show cause why he should not be disbarred from that jurisdiction based on the Illinois disbarment. Kivisto responded by requesting a hearing, arguing that the Florida proceedings were unfair based on the referee's failure to recuse himself and the bar's alleged fabrication of evidence, and requesting that an Assistant United States Attorney be appointed to investigate this alleged misconduct. He did not acknowledge that in Florida he had defaulted before the referee and then failed to prosecute his petition for review in the state supreme court, nor did he explain how the entry of a default judgment could constitute a denial of due process. He concluded by asserting that Illinois Supreme Court Rule 763, which permits reciprocal discipline, is unconstitutional and that the Illinois disbarment conflicted with Supreme Court precedent. The Northern District denied his requests and disbarred him. Kivisto appealed.

## II. Discussion

Kivisto argues that the district court erred by relying exclusively on the Illinois disbarment without granting him a hearing, making independent factual findings, or considering whether the Illinois disbarment proceedings satisfied the requirements of due process. He also claims that the Florida bar fabricated evidence and as a result the Florida proceedings violated due process. Finally, Kivisto contends that a "constitutionally intolerable probability" exists that the Florida referee lied about not receiving Kivisto's amended motion to disqualify.

Although federal disbarment does not follow automatically from disbarment in state court, we have held that " 'state disbarment proceedings are entitled to great weight and should be relied upon' " in the absence of evidence that the state proceeding was tainted by serious flaws. *See In re Reinstatement of Leaf*, 41 F.3d 281, 284 (7th Cir. 1994) (quoting *In re Jafree*, 759 F.2d 604, 608 (7th Cir. 1985)). An attorney may avoid reciprocal disbarment by demonstrating that the state proceeding suffered from a violation of due process or infirmity of proof, that reciprocal discipline would result in injustice, or that his misconduct warrants different discipline. *See In re Ruffalo*, 390 U.S. 544, 550 (1968)*; Selling v. Radford*, 243 U.S. 46, 51–52 (1917)*; In re Wick*, 628 F.3d 379 (7th Cir. 2010)*; Leaf*, 41 F.3d at 284; *In re Roman*, 601 F.3d 189, 192 (2d Cir. 2010)*; see also* N.D. ILL. R. 83.26 (stating that

"Executive Committee shall . . . impose the identical discipline" absent the above deficiencies).

Yet evidentiary hearings are not required in federal disbarment proceedings when a full and fair hearing was offered in state court. *See In re Palmisano*, 70 F.3d 483, 486 (7th Cir. 1995); *In re Poulakidas*, No. 96-3779, 1998 WL 67712, at *1 (7th Cir. Feb. 17, 1998) (nonprecedential disposition); *In re Bailey*, 450 F.3d 71, 75 (1st Cir. 2006); *see also In re Kramer*, 193 F.3d 1131, 1133 (9th Cir. 1999) ("[A]t a minimum, the district court should issue an order to show cause to Kramer and, unless he concedes that the action of the New York courts satisfies *Selling* and its progeny, the district court should review the state court record."). The fact that Kivisto's disbarment in Illinois followed from a default judgment in Florida does not mean that the district court should have conducted its own evidentiary hearing. As this court has noted in the context of issue preclusion, due process does not require that all issues be "actually litigated" or that a hearing be provided in every case. Rather, it requires the *opportunity* for a hearing, which Kivisto received. *See Richards v. Jefferson County, Ala.*, 517 U.S. 793, 797 n.4 (1996); *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993). A default judgment is not an exception to this rule so long as the courts of the state that issued the default would give it preclusive effect, *In re Catt*, 368 F.3d 789, 790–92 (7th Cir. 2004) (concluding that Due Process Clause does not require relitigation in federal court of findings arising from state default judgment), which Florida would do, even for disbarment proceedings, *see The Fla. Bar v. Tipler*, 8 So. 3d 1109, 1119 (Fla. 2009). The Executive Committee therefore did not err in denying Kivisto's request for a hearing if it correctly determined that the Illinois disciplinary proceedings were adequate.

We conclude that it did. Although Kivisto continues to allege prosecutorial and judicial misconduct in the proceedings before the Florida referee, Kivisto was disbarred in Florida not because the referee gave credence to fabricated evidence or acted on bias but because Kivisto stopped participating in his own defense and then failed to submit a timely brief to the Supreme Court of Florida. The effect of his *own* litigation conduct was to admit the allegations of professional impropriety in the proceeding before the referee and then to compound the situation by failing to prosecute his petition for review before the Florida supreme court. Indeed, that court's disbarment order makes plain that the court treated Kivisto's failure to prosecute as tantamount to not contesting the referee's recommendation of disbarment.

Moreover, although Kivisto asserted in response to the Executive Committee's show-cause order that Illinois Supreme Court Rule 763 is unconstitutional and in conflict with Supreme Court precedent, he now acknowledges that "the Supreme Court's reasoning [has] been incorporated into the Illinois reciprocal disciplinary procedures" and suggests instead that the Supreme Court of Illinois did not follow its own rules. Rule 763, however,

provides that in a reciprocal disciplinary action, an attorney may be heard only on the issues of:

> (1) whether or not the order of the foreign State was entered; (2) whether it applies to the attorney; (3) whether it remains in full force and effect; (4) whether the procedure in the foreign State resulting in the order was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process of law; and (5) whether the conduct of the attorney warrants substantially less discipline in this State.

In his response to the Executive Committee's order to show cause, Kivisto did not argue that he was deprived of due process by the Florida default judgment. Nor did he claim that substantially less discipline was warranted in Illinois for the conduct of which he was found guilty in Florida.

Under Rule 763, then, there was nothing left for the Supreme Court of Illinois to consider. The Executive Committee therefore did not err in finding that the Illinois procedures were adequate.

AFFIRMED.