**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 20-9505**

---

In the Matter of Jason Edward Rheinstein, Esquire,

Respondent.

---

**No. 21-1176**

---

In re:  JASON EDWARD RHEINSTEIN,

Appellant.

------------------------------

LYDIA E. LAWLESS,

Court-Assigned Amicus Counsel.

---

Appeal from the United States District Court for the District of Maryland, at Baltimore.
James K. Bredar, Chief District Judge.  (1:20-mc-00053)

---

Argued:  October 27, 2022                         Decided:  January 4, 2023

---

Before DIAZ, THACKER, and QUATTLEBAUM, Circuit Judges.

---

Unpublished per curiam opinion imposing reciprocal disbarment in No. 20-9505 and affirming district court decision to impose reciprocal discipline in No. 21-1176.

---

**ARGUED:**   Lydia E. Lawless, ATTORNEY GRIEVANCE COMMISSION OF MARYLAND, Annapolis, Maryland, for Court-Assigned Amicus Counsel.   Jason E. Rheinstein, Severna Park, Maryland, for Respondent.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jason Edward Rheinstein, who was disbarred from the practice of law in Maryland, appeals the district court's decision reciprocally disbarring him in that court. We consolidated his appeal with an original action in this court, in which we consider whether we should impose our own reciprocal disbarment. Finding no due-process violation, infirmity of proof, or other "grave reason" for ignoring the state bar's decision, *Selling v. Radford*, 243 U.S. 46, 51 (1917), we reciprocally disbar Rheinstein. And we hold that the district court didn't abuse its discretion in doing the same.

I.

A.

We begin by summarizing Rheinstein's disciplinary proceedings in Maryland.

1.

On April 22, 2016, Rheinstein was served with the Attorney Grievance Commission's Petition for Disciplinary or Remedial Action. The Commission filed the Petition in Maryland's Court of Appeals (now named the Supreme Court of Maryland), and that court assigned the matter to the Circuit Court for Anne Arundel County, per Maryland's disciplinary procedures. We discuss the Petition in some detail because the Maryland courts found that Rheinstein admitted its allegations by default.

Before they became Rheinstein's clients, Charles and Felicia Moore executed a loan agreement with Imagine Capital, Inc. The Moores defaulted and Imagine enforced a "confessed judgment" clause that entitled it to practically automatic judgments. At first,

3

the Moores tried to challenge the confessed judgments and Imagine's collection efforts pro se, but they eventually hired Rheinstein.

According to the Petition, Rheinstein soon "developed an elaborate conspiracy theory involving Imagine, its principals, attorneys, lenders and other associates," and then "embarked on a crusade to prove his theory.  His conduct exceeded the bounds of zealous advocacy."  J.A. 109–10.

Rheinstein first filed a complaint with the Attorney Grievance Commission against Imagine's counsel.  Citing Rheinstein's grievance, that counsel withdrew from representing Imagine, which then hired new outside counsel.

Later, the Maryland trial court in the confessed-judgment action held a hearing. "During the hearing [Rheinstein] interjected irrelevant and unsubstantiated accusations against Imagine and its members regarding an elaborate fraud scheme.  [Rheinstein] leered at [Imagine's officer] during the proceeding and led the court to believe that Imagine and its officers were under investigation by the Department of Justice."  J.A. 110.  Imagine's officer then "invoked his Fifth Amendment right to remain silent.  At the conclusion of the hearing, the court vacated the confessed judgments."  *Id.*

Imagine hired new counsel once again, Matthew Hjortsberg of the firm Bowie & Jensen, to appeal.  Rheinstein repeatedly emailed Bowie & Jensen personnel, threatening to sue the firm, Hjortsberg, and another attorney, and to report them to the Attorney Grievance Commission if they didn't drop the confessed-judgment appeal.  As a result, Bowie & Jensen notified its insurance carrier and hired outside counsel.

4

Over the next months, Rheinstein filed various rule-violating documents in the confessed-judgment appeal, including a "frivolous Petition for Writ of Certiorari," "a frivolous motion to dismiss the appeal," a "second frivolous Motion to Dismiss Appeal," multiple "frivolous" briefs and exhibits, and a "frivolous 'Motion to Resume Proceedings and Renewed Motion to Dismiss Appeal.'"  J.A. 111–14.

Rheinstein also "filed a [separate] frivolous complaint," naming 28 defendants and alleging that "Imagine, acting in concert with other defendants, engaged in an elaborate fraud scheme."  J.A. 115.  The next month, Rheinstein filed a federal qui tam action on behalf of Mr. Moore under the False Claims Act, alleging that Imagine's officer engaged in mortgage fraud.

In the meantime, Rheinstein emailed Hjortsberg and Bowie & Jensen's outside counsel, requesting that Imagine settle the lawsuits Rheinstein filed for $5 million. Rheinstein also asked Hjortsberg and his firm to withdraw from representing Imagine, alleging that they were conspiring with Imagine to commit crimes and fraud.  Rheinstein sent one particularly profanity-laced email in which he again threatened to sue Hjortsberg, accused him of fraud, and requested a $5 million "global settlement."  J.A. 118.  After Bowie & Jensen's outside counsel told Rheinstein his email was unacceptable, Rheinstein "apologize[d] for the unprofessional tone" and said that "the profanity, while regrettable, was a figure of speech."  J.A. 119.

Rheinstein also sent a 16-page letter to the Chief Judge of the Maryland Court of Special Appeals, accusing Hjortsberg and his firm of improper ex parte communications to "manipulate the trial court record" and "manufacture arguments."  J.A. 121.

The Moores subsequently filed for bankruptcy. Their filing stayed the confessed-judgment appeal and made it part of the bankruptcy estate. But Rheinstein still contacted Hjortsberg to set up depositions of Imagine's officers, not mentioning that his clients had filed for bankruptcy or that the appeal was stayed.

Rheinstein also filed five proofs of claim against the Moores' bankruptcy estate, for attorney's fees and costs, totaling $85,604.61. The trustee and the Moores objected to Rheinstein's claims. The trustee then agreed to assign the qui tam claims to Rheinstein in exchange for withdrawing his bankruptcy claims.

Based on Rheinstein's conduct, the Commission's Petition alleged that he violated Maryland Lawyers' Rules of Professional Conduct 1.1 (Competence); 3.1 (Meritorious Claims and Contentions); 3.2 (Expediting Litigation); 3.4(c) and (e) (Fairness to Opposing Party and Counsel); 4.4(a) (Respect for Rights of Third Persons); and 8.4(a), (c), and (d) (Misconduct).

2.

Rheinstein moved to dismiss the Petition and removed the case to federal court. But the district court granted the Commission's motion to remand, holding that it lacked subject-matter jurisdiction and that even if it had jurisdiction, it "would nevertheless have abstained and remanded the case to proceed in the state court." *Att'y Grievance Comm'n v. Rheinstein*, No. CV MJG-16-1591, 2017 WL 1035831, at *3 (D. Md. Mar. 17, 2017). The state court denied Rheinstein's motion to dismiss.

At the motion-to-dismiss hearing, there was a long colloquy about Rheinstein's failure to respond to the Commission's discovery requests, which were served with the

6

Petition.  The court directed that all discovery be completed within 60 days after the hearing, and that any motions to compel be filed before that deadline.  It also set a six-day trial beginning in September 2017.

Before the 60-day deadline, the Commission moved for sanctions and an order of default because Rheinstein still hadn't answered the Petition or responded to the discovery requests.  The Commission requested that all the Petition's allegations be deemed admitted and that Rheinstein be precluded from presenting documents or witnesses at trial.  The next day, Rheinstein filed a 99-page answer and affirmative defenses to the Petition, but he didn't respond to the Commission's discovery requests.  A few days later, he propounded his own discovery requests on the Commission.  Rheinstein also opposed the motion for sanctions, arguing that the Commission's discovery requests were "nullified" when he tried to remove the case to federal court.  J.A. 547.

The court denied the Commission's motion for a default since Rheinstein had filed his answer the next day.  The court said it would take up the motion for sanctions at trial.  The next week, the Commission served its responses to Rheinstein's discovery requests.

Four days before the trial was to begin, Rheinstein filed a new notice of removal.  This time, he asserted that the Commission's discovery responses showed an "illicit strategy" to discipline him for uncharged conduct and litigate the merits of his qui tam case.  J.A. 1672.  The district court granted the Commission's emergency motion to remand, again finding no grounds for removal.

7

Rheinstein appealed that decision and we affirmed. *See Att'y Grievance Comm'n v. Rheinstein*, 750 F. App'x 225 (4th Cir. 2019) (per curiam). Rheinstein then unsuccessfully petitioned for certiorari.

Back in state court, the original presiding judge had retired, and in June 2019, a new judge set a trial for the next month. The Commission filed a "Motion for Sanctions and/or Motion in Limine," again asserting Rheinstein's continued failure to respond to the discovery requests that were served more than three years ago. The Commission again asked for a sanction of default and an order precluding Rheinstein from presenting trial evidence.

The next day, Rheinstein served written responses to the discovery requests. In response to one interrogatory, he provided what the Maryland Court of Appeals later called "an extensive list of individuals he intended to call as non-expert witnesses." *Att'y Grievance Comm'n v. Rheinstein*, 223 A.3d 505, 517 (Md. 2020). He designated an attorney expert to testify that Rheinstein's various documents and positions weren't frivolous. And he stated that he was "endeavoring to locate a mental health expert to opine on Respondent's attention deficit disorder ('ADHD') disability and why it was the root cause of certain matters at issue." *Id.* at 518. But he served no documents in response to the Commission's discovery requests.

Rheinstein then filed a 25-page opposition to the Commission's motion for sanctions, plus exhibits. Although he'd responded to the discovery requests, he again argued that "the removal nullified the Pre-Removal Discovery Requests." J.A. 900. While

8

he asserted other arguments, he didn't suggest that ADHD affected the timing of his responses.

In the meantime, the court took judicial notice of eleven documents (dockets and filings from the various cases involving the Moores and Imagine); Rheinstein didn't object. The court also directed the Commission to submit proposed findings of fact and conclusions of law based on the Petition's allegations.

The court convened a hearing on the motion for sanctions and held that discovery sanctions were warranted. It found Rheinstein's June 2019 discovery efforts to be "the very first glimmer of compliance with the discovery rules. It was too little and much too late." J.A. 1282. The court struck Rheinstein's answer and held that the Petition's allegations were admitted. It also precluded Rheinstein from presenting evidence at trial.

The court then held a hearing on the Commission's proposed findings of fact and conclusions of law. The court re-affirmed the discovery sanctions and entered its own findings of fact and conclusions of law, finding that Rheinstein had violated Rules 1.1, 3.1, 3.4, 4.4, and 8.4 as alleged in the Petition.[1]

Rheinstein appealed, filing 155 pages of exceptions to the trial court's decision. But the Maryland Court of Appeals affirmed the circuit court's discovery sanctions, factual findings, and conclusions of law in an 80-plus-page opinion. *See Rheinstein*, 223 A.3d 505. The court also determined that disbarment was appropriate.

---

[1] The Commission had withdrawn its allegation that Rheinstein violated Rule 3.2.

9

B.

The U.S. District Court for the District of Maryland entered an Order of Reciprocal Disbarment.  Rheinstein timely appealed, and that appeal was consolidated with the original action to determine whether we should impose reciprocal discipline under our own local rules.

We issued Rheinstein a notice to show cause, allowing him an opportunity to present any reasons under *Selling v. Radford*, 243 U.S. 46, 51 (1917), why we should decline to reciprocally disbar him.  Rheinstein requested a hearing under Local Rule 46(g)(9).  The matter has been fully briefed and argued.[2]

II.

We begin our analysis with the original reciprocal-discipline action in this court. Under our local rules, we may discipline an attorney if another bar has disciplined the attorney or if the attorney violates rules of professional conduct in the state in which the attorney maintains his principal office.  4th Cir. R. 46(g)(1)(b)–(c); *accord* Fed. R. App. P. 46(c).  Our rule also provides that the same "discipline imposed by another court is presumed appropriate for discipline" in this court.  4th Cir. R. 46(g)(2).

---

[2] Rheinstein has also submitted multiple motions, including a motion that we request complete copies of the judicial records of Maryland's courts, and a motion that we take judicial notice of the same eleven documents of which Maryland's courts took judicial notice in his disciplinary proceedings.  Given our decision, we deny the pending motions as moot.

10

"Although state disbarments are not binding upon federal courts, they are entitled to great respect." *Wrighten v. United States*, 550 F.2d 990, 991 (4th Cir. 1977). So we won't "re-adjudicate [] factual matters" decided in state disciplinary cases. *In re Mitrano*, 335 F. App'x 297, 299 (4th Cir. 2009) (per curiam). Rather, we presumptively order the same discipline imposed by an attorney's home-state bar, provided "(1) the state must have given the attorney notice of the charges and an opportunity to be heard; (2) the evidence must support the findings made; and (3) there must be no other 'grave reason' for ignoring the actions taken." *In re Fallin*, 255 F.3d 195, 197 (4th Cir. 2001) (cleaned up) (citing *Selling*, 243 U.S. at 51). Rheinstein raises arguments on all three *Selling* grounds. We find none persuasive.

## A.

First, we hold that Rheinstein's disciplinary proceedings satisfied due process. He received fair notice and wasn't disbarred for uncharged conduct. Nor was he denied a meaningful opportunity to be heard.

## 1.

Rheinstein appears to concede that he admitted the allegations within the Petition's four corners. But he argues that the Maryland courts disbarred him based on uncharged, "new allegations" that weren't in the Petition, implicating his due-process right to adequate notice. But what Rheinstein calls "new allegations" are findings about his litigation conduct during the disciplinary proceedings (which will always be absent from the charging document that *initiates* the disciplinary proceedings) and inferences that can reasonably be drawn from his admissions and the record before the Maryland courts.

11

To illustrate, Rheinstein contends the Maryland courts' main reason for disbarring him was that he "misrepresented facts" at the confessed-judgment hearing, and that this wasn't charged in the Petition. Opening Br. of Resp't/Appellant at 25. While the Petition says Rheinstein "interjected irrelevant and unsubstantiated accusations against Imagine" at the hearing and "led the court to believe that Imagine and its officers were under investigation by the Department of Justice," J.A. 110, it never says his accusations were "false," he argues.

Even so, the Petition put Rheinstein on notice that his conduct during the hearing—and specifically his actions leading the state court to believe that Imagine was subject to a DOJ investigation—was one of the subjects of the Commission's charge. And as *In re Ruffalo*, 390 U.S. 544 (1968), illustrates, that's what due process requires. There, the state disbarred an attorney only after adding a new charge in the middle of the hearing (relating to Ruffalo's hiring of an employee)—after both Ruffalo and the employee had testified. *Ruffalo*, 390 U.S. at 546, 550–51.

The Supreme Court held that disciplinary proceedings present "a trap when, after they are underway, the charges are amended on the basis of testimony of the accused. He can then be given no opportunity to expunge the earlier statements and start afresh." *Id.* at 551; *see also Nell v. United States*, 450 F.2d 1090, 1093 (4th Cir. 1971) (reversing, on direct appeal, suspension of attorney's license when he didn't learn the government sought disciplinary action, as opposed to reopening of an old case, until the hearing).

12

But no such thing happened here.  Rheinstein didn't face moving-target charges.  Rather, he was disbarred because of his default admissions to the Petition's allegations.[3]

Nor is the court's conclusion that Rheinstein made "misleading statements at the [confessed judgment] hearing," J.A. 1363, anything but a reasonable inference drawn from his admissions.  As Maryland's Court of Appeals has repeatedly held, there's nothing mysterious—much less unconstitutional—about drawing reasonable inferences from a set of facts.  *See, e.g.*, *Rheinstein*, 223 A.3d at 525 n.17; *Att'y Grievance Comm'n v. McDonald*, 85 A.3d 117, 128 (Md. 2014) (courts "routinely apply their common sense, powers of logic, and accumulated experiences in life" to draw reasonable inferences "from demonstrated sets of facts" (cleaned up)).  At bottom, we reject Rheinstein's contention that he was disbarred for uncharged conduct.

We turn next to a point that arose at oral argument and bears on Rheinstein's pending motions.  He contends that some of the "new allegations" came from the documents related to underlying litigation involving the Moores and Imagine, of which the

---

[3] We're not alone in rejecting Rheinstein's argument on this front.  *See, e.g.*, *Rheinstein*, 223 A.3d at 546 (Maryland Court of Appeals' rejection of same argument); *see also In re Rheinstein*, 242 A.3d 1089, 1089–90 (D.C. 2020) (per curiam) (reciprocally disbarring Rheinstein in D.C. and rejecting the "similar arguments" he made "to the Court of Appeals for the state of Maryland," including that he was disbarred "for uncharged actions"); *In re Rheinstein*, 173 N.Y.S.3d 693, 696–97 (N.Y. App. Div. 2022) (per curiam) (reciprocally disbarring Rheinstein in New York after being "unpersuaded by respondent's contention that he was found guilty of misconduct for which he was not properly charged").  Along with Maryland, D.C., and New York, Rheinstein has also been disbarred in Florida.  *See Fl. Bar v. Rheinstein*, No. SC20-1614, 2022 WL 1598898, at *1 (Fl. May 20, 2022).

13

Maryland courts took judicial notice. But, he argues, the Maryland courts never properly took notice of any specific *facts* from those documents.

Under Maryland law, courts can take judicial notice only of indisputable facts. *See Abrishamian v. Wash. Med. Grp., P.C.*, 86 A.3d 681, 697 (Md. Ct. Spec. App. 2014) (facts subject to judicial notice fall "into either the 'everybody around here knows that' category, or the 'look it up' category" (cleaned up)). But after reviewing these "new allegations," we're not convinced there was any judicial-notice impropriety here. The Maryland courts didn't take judicial notice of contested facts—indeed, they didn't need to, given Rheinstein's admissions. To the contrary, when the courts referenced these documents, they weren't citing them as proof of the (disputed) statements they contained.

And even if there were a procedural foot fault here, Rheinstein had the opportunity to object in the Maryland courts. Indeed, at the court's hearing on the Commission's proposed findings of fact and conclusions of law, Rheinstein's attorney could—and did—argue about judicial-notice issues. *See, e.g.*, J.A. 1144–46. Rheinstein also filed extensive objections to the court's findings of fact and conclusions of law. And he had the opportunity to argue the issue on direct appeal to the Maryland Court of Appeals.

Our review, in contrast, isn't for legal error, but for the *Selling* grounds. And Rheinstein's argument on this point doesn't amount to a due-process violation or another basis under *Selling* to disregard the disbarment. That's because the Petition's admitted allegations were, standing alone, sufficient to justify Rheinstein's disbarment, as we explain below. So we reject Rheinstein's arguments about the "new allegations," whether under judicial-notice principles or otherwise.

14

2.

We also hold that the Maryland courts afforded Rheinstein with an adequate opportunity to be heard. Rheinstein argues he was entitled to a trial, even though he defaulted, because of the "new allegations." Even setting aside the problems with Rheinstein's argument about the "new allegations," he did receive a post-default hearing about the proposed findings of fact and conclusions of law. And if he contends he should have been given an *evidentiary* hearing, due process doesn't go so far. *See In re Evans*, 834 F.2d 90, 91 (4th Cir. 1987) ("The district court's failure to hold an evidentiary hearing is irrelevant because procedural due process in a disbarment proceeding does not require a hearing of that nature be given to the attorney."). Due process requires only an "opportunity" to be heard, not that every point be "actually litigated." *In re Kivisto*, 493 F. App'x 762, 765–66 (7th Cir. 2012) (affirming district court's reciprocal disbarment after he defaulted in state disciplinary proceedings).

Rheinstein has raised other arguments about whether the Maryland courts afforded him due process. But we find none have merit. So Rheinstein has failed to rebut the presumption of reciprocal disbarment under the first *Selling* ground.

B.

Turning to the second *Selling* ground, we also reject Rheinstein's contentions that his disbarment rested on an infirmity of proof. To the contrary, his admissions to the allegations within the Petition's four corners, standing alone, support the Maryland courts' decision. Under Maryland law, his default admissions amount to proof by clear and convincing evidence sufficient to warrant disbarment. *See Att'y Grievance Comm'n v.*

15

*Thomas*, 103 A.3d 629, 645 (Md. 2014) ("Based on the deemed admissions, we conclude that the admitted facts are sufficient, to a clear and convincing standard, to warrant concluding that Respondent violated [multiple rules].").

And while the admissions themselves suffice, we also take no issue with Maryland courts drawing reasonable inferences from those admissions, as we explained above.

Rheinstein's remaining arguments here are essentially the kinds of defenses he might have raised if he hadn't defaulted. But by defaulting, he waived his opportunity to disprove rule violations and present mitigating evidence. If we were to hold that Rheinstein's after-the-fact proffer showed an infirmity of proof under *Selling*, we'd undermine the deference we afford to state bars' decisions. This we decline to do.

## C.

Finally, after reviewing the record and considering Rheinstein's arguments, we conclude that there's no "grave reason" under *Selling* to disregard Maryland's decision to disbar him.

## III.

In sum, Rheinstein has shown no grounds under *Selling* to prompt us to ignore Maryland's decision to disbar him. Without an adequate reason to depart from our presumption that Maryland's disposition should apply here, we reciprocally disbar Rheinstein from practice in this court. And we separately affirm the district court's decision to impose reciprocal discipline.

*SO ORDERED AND AFFIRMED*

16